STATE, EX REL., EVANS v. WHEATLEY.

4-5471                                          125 S. W. 2d 101

Opinion delivered February 20, 1939.

998

*Price Shofner,* for appellant.

*Jack Holt,* Attorney General and *Owens, Ehrman & McHaney,* for appellee.

HOLT, J. In this case appellant sought unsuccessfully in the Pulaski circuit court, third division, to have Walter Wheatley, one of the appellees herein, ousted from the office of state senator and was also unsuccessful in his effort to secure an injunction against the state auditor and the state treasurer, restraining them from paying Wheatley any compensation as state senator. Hence this appeal.

Appellant set up in his complaint that he is a citizen and taxpayer of Garland county, Arkansas, and that suit was brought on behalf of himself and all other taxpayers of the state; that appellee, Walter Wheatley, was elected to the office of state senator for the fourteenth senatorial district at the general election in November, 1938; that he had been sworn in as a member of the state senate, and unless ousted from that office, that he would exercise the powers and perform the duties of that office in the session of the General Assembly then just convened and now in session; that unless restrained or prohibited, the state auditor would issue warrants to said Wheatley, and the state treasurer would cash them in payment for his services as state senator. That Wheat-

ley was ineligible to serve as state senator, because he had been convicted of a felony by the Garland circuit court, and had been sentenced to serve one year in the state penitentiary as a result of said conviction. He further alleged that conviction of a felony is an infamous crime under the laws and Constitution of this state. The complaint prayed that the state auditor and state treasurer be restrained from issuing and cashing any warrants to Wheatley for services, and that the court enter a judgment of ouster of Wheatley from said office and for other proper relief. The complaint was duly sworn to. After demurrers filed by appellees had been overruled, they each answered denying each and every material allegation of the complaint and asked that it be dismissed.

The cause was submitted to the trial court on appellant's complaint, defendants' demurrer and their motion to transfer to equity, defendants' answer and an agreed statement of facts, which is as follows: "That the defendant, Walter Wheatley, prior to January 1, 1916, was lawfully engaged in the retail liquor business; that the General Assembly of the state of Arkansas for 1915 enacted what is commonly referred to as the "bone dry" law, making it illegal on and after January 1, 1916, to barter, sell, procure, or give away spirituous liquor in the state of Arkansas. That shortly after January 1, 1916, and during said year, the said Walter Wheatley, without profit to himself, but purely as an accommodation to another person, procured one pint of gin, and was subsequently convicted for a violation of the above-mentioned "bone dry" law and sentenced to serve one year in the penitentiary; that prior to the time for appeal from said conviction had elapsed the then governor of the state of Arkansas issued a full and complete pardon to the said Walter Wheatley; that the said Walter Wheatley did not serve any part of the sentence imposed upon him by the court. That M. O. Evans appeared before the Arkansas state senate in 1937, and contested the right of Walter Wheatley to hold the office of state senator. That the senate affirmed the right of Walter

Wheatley to hold the seat to which he had been elected, and said body seated the said Walter Wheatley, and he served during the General Assembly of 1937 and the special session of 1938. That Walter Wheatley was the candidate of the democratic party in the general election of 1938, running for the office of senator from the fourteenth senatorial district. That he was opposed in said election by two other candidates, one of whom was the plaintiff in this action, M. O. Evans. That in said election Walter Wheatley was elected to the office of state senator, and that M. O. Evans ran third in said election. That the senate has accepted the qualifications of the said Walter Wheatley, and he has been sworn in as a member of that body, and is now serving and acting as state senator from the fourteenth senatorial district.''

The trial court found that the crime of which Wheatley was convicted was not and is not an infamous crime, that he is eligible to serve as state senator, and that the senate already having passed upon his qualifications and having accepted him, and he having been sworn in as a state senator, the court was without jurisdiction to grant the relief prayed and dismissed the complaint.

The appellant insists here that the trial court had jurisdiction to hear and determine this cause; that the action of the senate in seating Wheatley as a member of that body did not deprive the courts of jurisdiction to pass on his eligibility to serve as a senator, and that the constitutional provision, that each house of the General Assembly shall be the sole judge of the elections and qualifications of its members, did not include the power to judge as to the eligibility or ineligibility of anyone who might be elected to such a body.

Article V, § 11 of the Constitution of the state of Arkansas, provides as follows: ''Each house shall appoint its own officers, and shall be sole judge of the qualifications, returns and elections of its own members.'' We are of the opinion that this section of the Constitution is decisive of this case, and that the senate is the sole judge of the qualifications of its members. The above language is clear and unambiguous. This court said in

*State ex rel, Attorney General,* v. *Irby,* 190 Ark. 786, 81 S. W. 2d 419, ". . . where the language employed in the Constitution is plain and unambiguous the courts cannot and should not seek other aids of interpretation *Clayton* v. *Berry,* 27 Ark. 129; *State* v. *Ashley,* 1 Ark. 513; *Ellison* v. *Oliver,* 147 Ark. 252, 227 S. W. 586, and every word used should be expounded in its plain, obvious and common acceptation. *State* v. *Martin,* 60 Ark. 343, 30 S. W. 421, 208, L. R. A., 153." It is undisputed here that the senate has passed upon the qualifications of Senator Wheatley and held him qualified.

Article V, § 9 of the Constitution provides: "No person hereafter convicted of embezzlement of public money, bribery, forgery or other infamous crime shall be eligible to the General Assembly or capable of holding any office of trust or profit in this state." Appellant insists that Senator Wheatley is ineligible to a seat in the senate under this provision of the Constitution for the reason that he has been convicted of an infamous crime. We hold that the senate is the sole judge of his eligibility under this section. It may be that the senate in passing upon his eligibility or qualifications found that the crime with which he was charged was not infamous. But be that as it may, the action of the senate in that regard and in seating him is final, and the trial court in this case was without jurisdiction to determine that matter.

We cannot agree with appellant that the word "qualifications," as used in § 11, art. V of the Constitution, should be given the restricted definition and interpretation which he insists should be placed upon it. We think it includes and embraces the word "eligibility."

In *Raney* v. *Taylor,* 166 Ga. 476, 143 S. E. 383, the Supreme Court of Georgia said: "The judge, in a written opinion included in the record, distinctly recognizes the constitutional provision embodied in § 6430 of the Civil Code which declares that 'each house shall be the judge of the election returns, and qualifications of its members' but in effect holds that the question raised in this case is not one as to the qualifications of the respondent as a member of the General Assembly, but is as to his 'eligibility,' and in effect

holds that the court has the right to pass upon the 'eligibility' of a member of the General Assembly, and, if the member in question be found to be 'ineligible,' to deprive him of his seat. In support of that conclusion the trial judge sets forth in his opinion the definitions of the word 'qualification' and the word 'eligibility.' These definitions are taken from Webster's Dictionary, and are as follows: 'Qualification' is defined: 'Any natural endowment, or acquirement which fits a person for a place, office or employment, or enables him to sustain any character with success; and enabling quality or circumstance; requisite, capacity or possession.' 'Eligibility' is defined: 'Proper to be chosen, qualified to be elected —legally qualified.' We are of the opinion that the word 'qualifications,' as used in the constitutional provision quoted, is not subject to the limitations which the definition taken from the dictionary referred to would seem to impose. The word 'qualifications,' as thus used in the Constitution, seems to include also certain of the elements of 'eligibility.' "

In *Commonwealth* v. *Jones,* 10 Bush, p. 725, the court said: "We concur in the construction of the constitution as given by the court in the case of *Hall* v. *Hostetter* (17 B. Mon. 784), 'that the words *qualifications* and *qualified* are used therein in their most comprehensive sense, to signify not only the circumstances that are requisite to render a citizen eligible to office or that entitle him to vote, but also to denote an exemption from all legal disqualification for either purpose'; and we concur fully in the illustration given in that case: 'The circumstances under which a citizen is entitled to vote are prescribed in the constitution; but he may have those qualifications and still by some act have become disqualified, and not be a qualified voter in the sense in which the word is used in the Constitution. The word *qualifications* seems to be used in the same sense and implies not only the presence of every requisite which the constitution demands, but also the absence of every disqualification which it imposes.' "

By the above provision, art. V, § 11 of the Constitution, a clear mandate is given to each house of the General Assembly to be the sole judge of the qualifications of its members, and the courts of this state have no authority or jurisdiction to question the wisdom of their actions in seating or refusing to seat one elected to membership.

We conclude, therefore, that no error was committed by the trial court, and its judgment is accordingly affirmed.