THELMA WILLIAMS ET AL *v.* BOB W. DOUGLAS

5-5646                                        473 S.W. 2d 896

Opinion delivered December 6, 1971
[Rehearing denied January 10, 1972.]

*Walker, Kaplan, Lavey & Mays*, for appellant.

*Ned A. Stewart, Jr.* and *Arnold & Arnold,* for appellee.

CONLEY BYRD, Justice. The issue on this appeal is whether Art. 5 § 10, Arkansas Constitution, prohibits a Senator during his term of office from being elected and serving as a member of the board of directors of a school district. The Chancellor ruled upon a motion for summary judgment that appellee, Bob W. Douglas, Senator from the Eighth Senatorial District, could be so elected and serve. The appellants Thelma Williams, et al, taxpayers, appeal.

Article 5 § 10 of the Arkansas Constitution upon which appellants rely provides:

"No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State."

Appellee in his motion for summary judgment relies upon his election as a school director at the March 10, 1970, election. It was admitted that the election occurred during the term for which he was elected as a Senator. In support of the trial court's action appellee suggests that the office of school director is not a "civil office" within the meaning of Art. 5 § 10 and, in the alternative, that school directors were excepted from the ban of Art. 5 § 10 by the provisions of Art. 5 § 7 which provides:

"No judge of the supreme, circuit or inferior courts of law or equity, Secretary of State, Attorney General for the State, Auditor or Treasurer, recorder, or Clerk of any court of record, sheriff, coroner, member of Congress, nor any other person holding any lucrative office under the United States or this State (militia officers, justices of the peace, postmasters, officers of public schools and notaries excepted) shall be eligible to a seat in either house of the General Assembly."

We find no merit in the suggestion that the office of school director is not a "civil office." In the first place the Constitution Art. 14 § 4 provides:

"The supervision of public schools and the execution of the laws regulating the same shall be vested in and confided to such officers as may be provided for by the General Assembly."

Also Constitutional Amendment 40 provides:

"The Board of Directors of each school district shall prepare, approve and make public. . . a proposed budget. . . ."

In both *Reiff* v. *Redfield School Board,* 126 Ark. 474, 191 S. W. 16 (1916), and *A. H. Andrews Co.* v. *Delight Special School District,* 95 Ark. 26, 128 S. W. 361 (1910), we held that school directors were public officers. In so doing we pointed out that the rules respecting their powers are the same as those that are applicable to the powers of public officers generally. Other States generally hold that school directors are public officers, *State ex rel McKittrick* v. *Whittle,* 333 Mo. 705, 63 S. W. 2d 100, 88 A. L. R. 1099 (1933); *Barton* v. *Haight,* 169 Okla. 481, 37 P. 2d 968 (1934); *Norton* v. *Letton,* 271 Ky. 353, 111 S. W. 2d 1053 (1937); and *State ex rel Barnhill* v. *Thompson,* 122 N. C. 493, 29 S. W. 720 (1898); and that as such a school director is a "civil officer". *In re Election of School Committee of City of Woonsocket,* 28 R. I. 629, 72 A. 417 (1903). It was pointed out in *Starnes* v. *Sadler,* 237 Ark. 325, 372 S. W. 2d 585 (1963), that emoluments or pay was not a criterion for determining that an office was a civil office pursuant to Art. 5 § 10. Thus we conclude that the office of school director is a civil office pursuant to Art. 5 § 10, *supra.*

One of the fundamental principles or rules in the construction of a constitution is that effect must be given to every part and that, unless there is some clear reason to the contrary, no portion of the fundamental law should be treated as superfluous, meaningless or inoperative.

When the issue under consideration is studied with the view that no constitutional provision enjoys a preference and that none should suffer subordination or deletion, it at once becomes apparent that the two provisions here can be construed according to their plain language and without conflict. In the Legislative Article (Article 5), the framers in Art. 5 § 7 dealt in terms of who was ineligible to a seat in either house of the General Assembly. In stating that "No judge of the supreme. . . court. . . member of congress, nor any other person holding any lucrative office under. . . this State. . . shall be ELIGIBLE to a seat. . .," the framers made an exception in favor of militia officers, justices of the peace, officers of public schools and notaries. In doing so the framers apparently recognized that each house of the General Assembly must take the excepted officers as they found them for seating purposes and that those members could simultaneously hold both offices for there is no prohibition to the contrary. However in Art. 5 § 10 the framers took up the eligibility of a member, once he was seated, to accept by appointment or election a civil office during his term of office, and here the PROHIBITION is that no member ". . . shall. . . be APPOINTED or ELECTED to any civil office under this State." The framers made no exception to the PROHIBITION in favor of militia officers, justices of the peace, postmasters, officers of public schools and notaries. Thus, it follows that when Art. 5 § 7 is read with reference to the ELIGIBILITY of persons entitled to a SEAT in the General Assembly and that when Art. 5 § 10 is read as a PROHIBITION upon a member after he is seated, there is no apparent conflict between the plain meaning of the two sections. Having determined that the office of school director is a civil office within the meaning of Art. 5 § 10, it follows that the Chancellor erred in granting summary judgment in favor of appellee based upon the March 1970 election.

It has been suggested that if it is permissible for a school board director to be seated as a member of the General Assembly and thereafter serve in both capacities, it is illogical to hold that the offices are incompatible when a member of the General Assembly runs for re-election to the office of school director. To this

argument, we only point out that Art. 5 Sec. 10 does not deal in terms of "incompatability." The people in creating the offices of Representative and Senator had the right to assure unto themselves that a person so elected would use the office for purposes of representing the people rather than for self promotion such as seeking an election or appointment to office.

That the PROHIBITION in Art. 5 § 10 was not intended to be restricted by the exception in Art. 5 § 7 can be seen from similar provisions in prior constitutions. In Article IV of the 1836 Constitution we find the following provisions:

"§ 10. No judge of the supreme, circuit or inferior courts of law or equity, secretary of state, attorney for the state, state auditor or treasurer, register or recorder, clerk of any court of record, sheriff, coroner, member of Congress, nor any other person holding any lucrative office under the United States or this State (militia officers, justices of the peace, postmasters and judges of the county court excepted), shall be eligible to a seat in either house of the General Assembly."

"§ 14. No senator or representative shall, during the term for which he shall have been elected, be appointed to any civil office under this State which shall have been created or the emoluments of which shall have been increased during his continuance of office, except to such office as shall be filled by the election of the people."

In Article IV of the 1861 Constitution the subject matter here involved was set forth as follows:

"§ 10. Militia officers, justices of the peace, and postmasters, are declared to be eligible to either branch of the General Assembly; but no person who now is, or who shall hereafter be a collector or holder of public money, shall be eligible to either branch of the General Assembly, nor to any office of profit or trust, until he shall have accounted for and paid

over all sums for which he may be liable; and no person holding any office of trust or profit under the Confederate States (except postmasters) shall be eligible to any office of trust or profit belonging to either of the three departments of this State."

"§ 13. No member of the General Assembly shall be elected or appointed to any civil office in this State, which shall have been created, or the emoluments of which shall have been increased, whilst he was a member thereof, except he be elected to such office by a vote of the people, and that no member of the General Assembly shall be elected to any office within the gift of the General Assembly during the term for which he shall have been elected."

The 1864 Constitution treated the subject in Article IV in this language:

"§ 10. No judge of the Supreme, Circuit or inferior courts of law or equity, Secretary of State, Attorney-General of the State, District Attorneys, State Auditor or Treasurer, Coroner or member of Congress, nor any other person holding any lucrative office under the United States or this State (militia officers, Justices of the Peace, postmasters and judges of the County Courts excepted), shall be eligible to a seat in either House of the General Assembly."

§ 14. No Senator or Representative shall, during the term for which he shall have been elected, be appointed to any civil office under this State which shall have been created, or the emoluments of which shall have been increased, during his continuance in office, except to such office as shall be filled by the election of the people."

The "Carpet-bag" Constitution of 1868 (Article V) contained only the following provision:

"§ 11. No person holding any office under the United States, or this State, or any county office, except

postmasters, notaries public, officers, of the militia and township officers shall be eligible to or have a seat in either branch of the General Assembly, and all votes given for any such person shall be void."

The experiences of this State with the "carpet-baggers" and the Brooks-Baxter War are history but it was after those experiences that the people enacted the PROHIBITION set forth in Art. 5 § 10. This historical review rather amply demonstrates that, in the enactment of the PROHIBITION, the people were attempting to correct something more than that which is referred to as "incompatibility", and that the PROHIBITION is not affected or diluted by the exception set forth in Article 5 § 7.

Appellants hereby request that we grant their motion in the trial court for summary judgment and that the Miller County Board of Election Commissioners be directed to hold a special election as soon as possible. The latter request obviously cannot be granted because the Election Commissioners are not parties. On the summary judgment request, we note that appellants did. not completely abstract their request therefor and upon the abstract and briefs before us it is impossible to say that their motion should be granted. Instead, we only reverse the order of the court granting appellee's summary judgment and remand for proceedings not inconsistent with this opinion.

Reversed and remanded.

HARRIS, C. J. and HOLT, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. While, philosophically speaking, I have never favored public officials holding more than one public office, I cannot agree that appellee is illegally serving on the Board of Directors of the Texarkana School District Number 7, in Miller County.

We have here two provisions, Article 5, § 7, and Article 5, § 10, which appear to conflict. The two provi-

sions, in reaching a proper construction, must be read together. *Little Rock* v. *North Little Rock,* 72 Ark. 195, 79 S. W. 785. Also, we have said that "Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect as clearer and more definite expressions of the legislative will." *Scott* v. *Greer,* 229 Ark. 1043, 320 S. W. 2d 262. We have also said that the rules of construction applicable to statutes ordinarily apply with equal force to Constitutions or amendments thereof. *Shepherd* v. *Little Rock,* 183 Ark. 244, 35 S. W. 2d 361. Under these rules, Article 5, § 7 would be controlling since the two sections are inconsistent and § 7 does deal more specifically and more particularly with school board members than § 10. Though the majority quote Article 5, § 7, permit me to again quote that section in full.

"Officers ineligible.—No judge of the supreme, circuit or inferior courts of law or equity, Secretary of State, Attorney General for the State, Auditor or Treasurer, recorder, or clerk of any court of record, sheriff, coroner, member of Congress nor any other person holding any lucrative office under the United States or this State (militia officers, justices of the peace, postmasters, officers of public schools and notaries public excepted), shall be eligible to a seat in either house of the General Assembly."

The provision, "* * * nor any other person holding any lucrative office * * *" clearly covers members of the General Assembly; just as clearly, the holders of offices within the parenthesis are eligible to a seat in either the House or Senate, and the majority agree that this is true. But the next conclusion reached by the court is, in my opinion, wholly impractical, and I can see no rhyme nor reason in the interpretation reached by the majority. Bear in mind that the majority agree that a school director is eligible to a seat in the General Assembly, and if elected, can continue to hold both positions until his term as school director expires. They state however, that he is prohibited from serving an *additional* term on the school board; in other words, if he were already a mem-

ber of the school board when elected to the General Assembly, he can continue to serve the remainder of his school board term, but cannot serve if re-elected to the board after becoming a legislator. The basis, of course, for a prohibition against legislators serving in other offices is incompatibility of the offices, *i. e.,* a conflict of interest between the two positions. School board directors, depending upon where the directors are located and the size of the school board, are elected to terms varying from three years to five years. Let me give an example that, I think, demonstrates the complete lack of logic in the majority position. An individual is elected as a school board director for a term of five years in March 1972.[1] In November of the same year, he is elected to the General Assembly. He is sworn in in January of 1973, and can serve both as a legislator and a school board member. This individual can legally serve all of 1972, 1973, 1974, 1975, and 1976, and through most of the session of 1977. Now, the majority, by their opinion, agree that this is entirely legal. In other words, under the majority opinion, this school board member could legally serve a full term in the Senate, or two terms in the House. If he did not desire but one term in the Senate, or two terms in the House, under the view expressed by the majority, he could hold, and serve, in both offices at the same time with complete impunity. He would only be prohibited from serving an *additional* term on the school board.

It appears to me that the majority have decided that it is perfectly all right for a person to serve for "a while" as both a legislator and a school board member but that, after the passage of time, the offices suddenly become incompatible. I cannot believe that the framers of the Constitution, in writing Article 5, § 7, intended any such peculiar or unsound result. If it is in the interest of good government to prohibit a legislator from seeking re-election, and serving, as a school board director after he has served several years in both capacities, it is equally in the interest of good government to prohibit one sworn into the General Assembly from serving *any time whatsoever* as school board director. To state it another way,

[1] The annual school election is held on the second Tuesday in March. Ark. Stat. Ann. § 80-301 (Supp. 1969).

if the principle of good government demands that a legislator not serve as a school board director, the same principle also demands that a school board director not be permitted to serve as a legislator. I do not see how the logic of this position can be successfully refuted, and all the framers had to do to prevent an individual from holding both the office of Senator (or Representative) and school board member, was simply to leave out the exceptions in Article 5, § 7. Instead of that, the court majority have the framers taking a circuitous route to permit a legislator, during his tenure as such, to legally serve as a school director part of the time—but illegally the rest of the time.

There are related matters which reinforce my conviction that the majority have reached an erroneous conclusion. Bear in mind that the majority holding will also prevent a legislator (if an attack is made) from obtaining a commission as a notary public, or a commission in the military service. There are at least 17 members of the current legislature who hold commissions as notaries public (probably more) and several hold commissions in the National Guard. Do the majority really feel that the framers of the Constitution intended to bar a legislator from appointment to these positions? To me, it is obvious that the exceptions set out in Article 5, § 7, were set out because the framers felt there was no conflict in serving in these positions and also serving as a legislator.

While not really pertinent to a decision in this case, it is interesting to note that the proposed Arkansas Constitution of 1970, likewise included the exceptions here under discussion. Article XI, § 4 provides:

"No person shall hold more than one office in the same branch of government at the same time, except that members of the armed forces of the State, officers of the public schools, and notaries public may serve in any public office to which they may be chosen."

I reiterate that, in my view, the holding of the court in this case bypasses logic, and reaches a conclusion

never dreamed of by the framers of the Constitution of 1874.

I therefore respectfully dissent.

I'm authorized to state that HOLT, J. joins in this dissent.