Charles R. GARNER *v.* Honorable John G.
HOLLAND, Circuit Judge of Sebastian
County, et al

78-269                                              572 S.W. 2d 589

Opinion delivered November 6, 1978
(In Banc)

Petitioner, *pro se.*

*Charles Karr,* Pros. Atty., by: *J. Lamar Porter,* Deputy Pros.
Atty., for respondents.

GEORGE HOWARD, JR., Justice. We are to determine if
the trial court's holding, which finds that petitioner's
residence, in order to stand for election as a delegate for the
Arkansas Constitutional Convention in the November 7,
1978, General Election, is 11023 Hunters Point, Legislative

District 16, instead of 3017 Free Ferry Road, Legislative District 15, where appellant sought to run, resulting in a decree approving the action of the Sebastian County Election Commission in refusing to place the petitioner's name on the ballot, is supported by substantial evidence.

## THE FACTS

The essential facts in this case, which are not in dispute, are:

On September 28, 1978, after petitioner had filed his nominating petition and paid the necessary filing fee, the Secretary of State certified petitioner as a candidate for delegate, Position Number One, District 15, Sebastian County, to the Constitutional Convention of 1979, to be voted on November 7, 1978.

However, on September 29, 1978, at approximately 3:00 p.m., petitioner was advised that the Sebastian County Election Commission would conduct a meeting at 4:00 p.m. to examine petitioner's qualifications to be a candidate in Legislative District 15. Because of a prior commitment, petitioner was unable to make the meeting. The Election Commission met and, after considering an opinion rendered by its attorney, Charles Karr, that petitioner did not possess the qualifications to run as a delegate in District 15, concluded that petitioner's name would not be printed on the ballot.

In accordance with Ark. Stat. Ann. § 3-612 (Repl. 1976),[1] petitioner filed an affidavit in the Sebastian County Circuit Court seeking to have the Commission show cause why his name should not be printed on the ballot. On October 9, 1978, the Circuit Court of Sebastian County con-

---

[1]Ark. Stat. Ann. § 3-612 provides, in material part, as follows:

"Whenever it shall appear by affidavit that an error or omission has occurred in the publication of names of [or] description of candidates nominated for office, or in the printing of ballots, the Circuit Court of any County, or the Judge thereof in vacation, or if the Circuit Judge be then absent from the County, the Judge of the County Court, shall, upon the application of any elector, by order, require the County Election Commissioners to immediately correct such error or omission, or show cause why the same should not be done."

ducted a hearing and, after considering all evidence adduced, made a finding that appellant's residence for purposes of the Constitutional Convention was 11023 Hunters Point, Legislative District 16 as opposed to Legislative District 15 where appellant sought to run; and further held that the Sebastian County Election Commission was justified in not placing petitioner's name on the ballot as a candidate for the position of delegate to the Constitutional Convention.

On October 11, 1978, petitioner filed his petition and motion in this Court praying essentially for a writ of mandamus requiring the Sebastian County Election Commission to include his name on the printed ballot; and that the order of the Circuit Court of Sebastian County, in effect, should be stayed or set aside, and that time being of the essence, the matter should be advanced on this Court's docket for a speedy disposition.

It is conceded by the appellees that the petitioner is an attorney who maintains his office for the general practice of law at 3017 Free Ferry Road in Fort Smith which is located in Legislative District 15; and that petitioner is registered to vote in Legislative District 15 and has voted in Precinct 1-H for many years which is located in Legislative District 15; and that his office address is designated as his residence and has been certified as his legal address for numerous personal reasons. For example, petitioner's driver's license, fishing and hunting licenses, passport, bank accounts, tax and assessment records, medical insurance policies, automobile registration certificate and a variety of other personal matters all indicate and designate 3017 Free Ferry Road as petitioner's address.

Petitioner also testified that his wife and son lived at 11023 Hunters Point which is located in District 16; and that although he regards 3017 Free Ferry Road, which is located in District 15, as his residence, 90% of his sleeping is done at 11023 Hunters Point and approximately 10% of his sleeping hours are spent at 3017 Free Ferry Road; that he and his wife own the dwelling house at 11023 Hunters Point; and that his son attends the Woods Elementary School which is located in Legislative District 16. Moreover, petitioner testified that he

does not own the building where he maintains his law office at 3017 Free Ferry Road and that two separate firms share the same building.

## THE DECISION

Inasmuch as absentee ballots were scheduled to be placed in the hands of the Sebastian County Clerk twenty-five days prior to the General Election and concluding that time was of the essence, we entered our order denying petitioner's request for a writ of mandamus on October 16, 1978, but indicated that an opinion would follow.

After carefully reviewing the record before us, we are persuaded that the only issue tendered to the Circuit Court of Sebastian County was the question of residency of the petitioner. To put it another way, the trial court was called upon to determine petitioner's official residence. Consequently, the trial court had before it a factual issue.

However, petitioner, for the first time, in this Court has sought to raise an issue as to whether or not the langugage contained in Section 4 of Act No. 3 of the Extraordinary Session of the Arkansas General Assembly of 1977, calling for a Constitutional Convention, mandatorily requires the Sebastian County Election Commission to include his name on the ballot of the General Election of 1978, inasmuch as the Secretary of State has certified the petitioner as being eligible to run as a delegate.[2]

It is well settled that an issue raised for the first time at the appellate level will not be considered by this Court.

The posture that we take in finding that only the issue of residency was tendered to the trial court is supported by the following exchange that took place in the trial court:

---

[2]Section 4 of Act No. 3 of the Extraordinary Session of the General Assembly of 1977, in material part, is as follows:

"The County Election Commissioners shall include on the ballots of the General Election of 1978 the names of all candidates for delegate to the constitutional convention as certified by the Secretary of State. . . ."

"THE COURT: . . . I do wonder if all the evidence shouldn't be presented to the Election Commission first before it comes here, the same evidence I guess we are presenting here today?

"MR. KARR: Well, Your Honor, they have made a factual determination and that was based partly on my representation to them which followed a conversation that I had with Mr. Garner. . . . There may be a dispute as to the significance of some of those facts and what residence means.

"THE COURT: Do you want to go ahead and proceed here, Mr. Garner?

"MR. GARNER: You mean — ?

"THE COURT: Do you want to go ahead and present everything and have me make my decision?

"MR. GARNER: Yes."

After all of the evidence had been presented by petitioner and respondents to the trial court, the following exchange took place between the court, counsel for the election commission and petitioner, Mr. Garner:

"THE COURT: . . . There is one thing that neither of you have mentioned, and I would like some comment on, and that is Section 4, 202-104, Constitutional Convention.

"MR. GARNER: What is it, Judge? Section what?

"THE COURT: Section 4 of Arkansas Statutes 2-104, which is calling the Constitutional Convention. It says, 'A county election commission shall include on the ballot of the General Election of 1978 the names of all candidates for Delegate to the Constitutional Convention as certified by the Secretary of State.' Now, it has been admitted by all parties that Mr. Garner has been certified by the Secretary of State. If you all need a little

time to think about that — Of course, this decision needs to be made today because I imagine one side or the other is going to the Supreme Court, I don't know, and it is going to take a while to get the transcript. I may be —

. . .

"THE COURT: Well, I agree it ought to be settled, but you are saying Section 4 is really not —

"MR. GARNER: — Doesn't mean what it says?

. . .

"THE COURT: Do you all want any more time to look up Section 4?

"MR. GARNER: I don't Your Honor. I think the facts are plain.

"MR. KARR: Your Honor, we stand on our Brief and argument.

"MR. GARNER: We stand on the facts, Your Honor."

We are convinced that petitioner waived the opportunity extended to him by the trial court to assert applicable provisions under Section 4 of Ark. Stat. Ann. 2-104 (Repl. 1976).

In *Shephard* v. *Hopson,* 191 Ark. 284, 86 S.W. 2d 30, we made the following observation:

"In *Duval* v. *Johnson,* 39 Ark. 182, it was held that the term 'usual place of abode' is synonymous with 'residence'. It is generally understood that one's usual place of abode or residence is where (if he is a married man) he abides with his wife and family. Therefore, the house in which one's wife and children are living is presumed to be a man's 'usual place of abode' . . . "

We are convinced that the rule in *Shephard v. Hopson,* supra, is dispositive of the issue raised in this case. We are further persuaded that the holding of the trial court is supported by substantial evidence. Accordingly, the petition for writ of mandamus is denied.

GEORGE ROSE SMITH, J., concurs.

FOGLEMAN and BYRD, JJ., would grant the writ.

GEORGE ROSE SMITH, Justice, concurring. I think it reasonable to believe that Mr. Garner deliberately chose not to raise the issue discussed in the dissenting opinion. He has actively practiced law for many years. He has evidently been conscious of a possible question about his legal residence, for he has taken extraordinary precautions to try to fix that residence at his rented office rather than at his home.

The act providing for the constitutional convention requires candidates to possess the qualifications of a member of the House of Representatives, which includes residence in the district to be represented. We may assume that the members of the convention will abide by that requirement in seating or refusing to seat delegates. It is to Mr. Garner's advantage, and certainly to that of the voters in the district, for the question of Mr. Garner's eligibility to be settled before the election. It would also be to Mr. Garner's advantage, if elected, to go to the convention with a court decision upholding his right to represent the district. He himself has filed this suit, not attacking the power of the board of election commissioners to act, but insisting instead on his own qualifications to be a candidate. I do not think it "hypercritical" to construe his pleadings to mean he wants exactly what he is asking for and that he does not intend to raise a point not mentioned in his pleadings. Moreover, even if the point had been raised in the trial court, which in my opinion it was not, Mr. Garner has not argued it either in his brief in this court or in his oral argument in this court. A point not argued in this court on appeal is waived. Thus the point in question is actually raised for the first time by the dissenting justice in this court. I am convinced that Mr. Garner neither raised it nor intended to raise it.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree that the determinative statute in this case may be ignored as having been raised for the first time on appeal. In considering whether this issue was before the trial court, we should not view the matter hypercritically. Litigation of this sort cannot be approached as deliberately as the usual lawsuit, either by litigants, attorneys, trial judges or appellate courts. By the nature of things, decisive action must be taken very rapidly.

The election at which petitioner desired to be a candidate is to be held on November 7. The chairman of the board of election commissioners gave petitioner a *one-hour notice* that the board was about to hold a meeting at 4:00 p.m. on September 29 on the question of his qualifications to be a candidate for delegate to the upcoming Arkansas Constitutional Convention of 1979, a question which was of no concern to that board, as I will presently demonstrate. It should have come as no surprise to anyone that petitioner's time was committed to that hour and that he could not be present. Petitioner, however, moved to correct the omission and error of the board by commencing this proceeding under Ark. Stat. Ann. § 3-612 (Repl. 1976) on October 5, 1978, less than a week after the board's action. The nature of the proceeding established by this statutory provision is itself indicative of the hurried process involved. The "litigation" is initiated by affidavit by the complaining party. Petitioner's affidavit in the trial court included a statement that, in due course, and in due time, he had prepared and filed the necessary papers and paid the necessary fee to the Secretary of the State of Arkansas, in order to have his name placed on the ballot in District No. 15, and, in due course, received notice that he had met the requirements for having his name on the ballot. Petitioner concluded thus:

> Since it is apparent that said Election Commission has acted erroneously, this Court, by and through its Order, should require the Sebastian County Election Commissioners to immediately correct their error and show cause why the same should not be done, and this Court should require them to print the name of Chas. R. Garner upon the Ballot as a Delegate for the

Constitutional Convention; and Chas. R. Garner, being a duly qualified and acting elector, does hereby request same.

The response to petitioner's affidavit was to the effect that petitioner was not qualified to be a candidate because he did not reside in District 15. The response of the board of election commissioners concluded thus:

The Commission found as a matter of law that residence for voting registration purposes and qualification to run for public office is one's usual place of abode and in the case of a married man where he lives with his wife and family.

Wherefore, the Sebastian County Election Commission has determined that Charles R. Garner is not a resident of Legislative District No. 15 and is, therefore, not qualified to be a candidate for the Constitutional Convention from Legislative District No. 15, Position 1, and is prepared to present proof and argument on all of the factual and legal issues raised herein at the Court's earliest convenience.

The issue as to the applicability of Act 3 of 1977 was raised by the pleadings.

Hearing was had on October 9. The trial court held that Garner's residence for the purpose of the constitutional convention was at 11023 Hunter's Point, which is in District 16, rather than District 15, and affirmed the action of the board in not placing Garner's name on the ballot.

The record discloses that Garner was duly certified to the Sebastian County Election Commissioners by the Secretary of State as a candidate for delegate to the constitutional convention. This should have concluded the matter, insofar as the election commissioners were concerned and as far as the trial court was concerned. The only evidence presented at the board's "hearing" was an affidavit (or opinion) of the prosecuting attorney. The board's finding was based entirely on the opinion of this official. That opinion was bas-

ed in substantial part upon Ark. Stat. Ann. § 3-615 (Repl. 1976), which has no application whatever. That section applies only to candidates for public office. Delegates to a constitutional convention do not hold public office. *Harvey* v. *Ridgeway*, 248 Ark. 35, 450 S.W. 2d 281.

The exchange between the circuit judge and the petitioner quoted in the majority opinion does not appear to me to demonstrate that the applicability of § 4 of Act 3 of 1977 was not an issue. As a matter of fact, it demonstrates to me that Garner did contend that the act controlled. The mere fact that Garner did not want further delay for research certainly does not detract from his previous statement as to the conclusive effect of the act. How could he have asserted reliance on this section of the statute more emphatically than to say, "Doesn't it mean what it says?"? If the answer was in the affirmative, no research was necessary.

The first erroneous premise of the prosecuting attorney and the election commissioners is that appellant was a candidate for public office. This is simply not so. See *Harvey* v. *Ridgeway*, supra. Although the board relied heavily upon § 2 of Act 3 of 1977, it totally ignored other sections of the same act. It should have read further, for other sections of the act were controlling.

It is clear that the General Assembly intended that the selection of delegates be conducted, and the results determined, much the same as elections to the General Assembly before the adoption of Ark. Stat. Ann. § 3-615. The pertinent portions of Act 3 read:

Section 2. Representation. One hundred (100) delegates shall be elected from the same districts and *on the same basis as members of the House of Representatives of the General Assembly.* *** Candidates for office of delegate to the Constitutional Convention of 1979 shall be qualified electors of the district in which they are a candidate and *shall possess the qualifications required by law for a member of the House of Representatives of the Arkansas General Assembly,* *** *Provided that neither the holding of an elective or appointive office under this State or a political subdivision thereof*

*nor the fact that a person is a candidate for such office shall disqualify such person to run for and serve as delegate to the Constitutional Convention provided for herein. The Convention shall fill vacancies in delegate positions by appointment of a qualified person from the district in which the vacancy occurs.*

Section 3. Nomination of delegates. Every person desiring to stand for election as a delegate shall file a nominating petition with the Secretary of State containing at least fifty (50) signatures of qualified electors of the district in which said person stands for election. In addition, a filing fee of Twenty-Five Dollars ($25.00) must be paid to the Secretary of State at the time said petitions are filed. *A candidate must designate the position being sought at the time nominating petitions are filed with the Secretary of State* *** Such petitions shall be filed with the Secretary of State no earlier than the third (3rd) Tuesday in August 1978, and no later than the first (1st) Tuesday in September 1978, and *upon verification of the nominating petitions and receipt of the filing fee, the Secretary of State shall certify the names of all candidates and the position which each is seeking to the County Election Commissioners not later than September 28, 1978.*

Section 4. Election of delegates. *The County Election Commissioners shall include on the ballots of the General Election of 1978 the names of all candidates for delegate to the constitutional convention as certified by the Secretary of State. The candidate receiving a majority of the votes for a particular position in said General Election shall be declared elected as a delegate to the convention* ***

Section 5. Conduct of the convention. The elected delegates shall assemble at the State Capitol Building, or at some other appropriate place designated by the Governor, at 10:00 a.m. on the second Monday in December next after their election for an organizational meeting of no longer than three (3) days duration. ***

Section 6. Secretary of State presides at organizational meeting. *** *The convention* shall elect its own officers and *shall be the sole judge of the qualifications and election of its own membership.* [Emphasis mine.]

That Ark. Stat. Ann. § 3-615 was a novelty in Arkansas was clear to the General Assembly when it was adopted. The emergency clause recognized that this was a drastic change in Arkansas law. In pertinent part, it reads:

> It is hereby found and determined by the General Assembly that under the present laws of this State, a person may, under certain circumstances, become a candidate for a public office which such person is not qualified and eligible to hold even if such person were elected to the office; that it is essential to the proper administration of the election laws of this State that legislation be enacted immediately to prohibit inclusion on the ballot of the name of any person as a candidate for any public office, if such person would not be qualified and eligible to fill such office if elected, and that this Act is designed to correct this situation. ***

The legislature was right. Election officials had never had any authority to question the qualifications of a candidate who met filing requirements, because their duties were purely ministerial, even though this court recognized that there was an argument that it would be a vain and useless proceeding to permit one to be a candidate for an office which he could not fill if he were elected to it. *Irby* v. *Barrett*, 204 Ark. 682, 163 S.W. 2d 512. Language peculiarly appropriate to this case is to be found in *Irby*. We said:

> If the chairman and secretary of the committee have the right to say that because of the decision of this court petitioner is ineligible to be a candidate for office, they may also say, in any case, that for some other reason a candidate is ineligible. For instance, it has been held by this court in many election contests that one must pay his poll tax; that he must do so after proper assessment in the time and manner required by law, and that otherwise he is not eligible even to vote, and unless he were a voter he could not hold office. So with other qualifications, such as residence. May this question be considered or decided by the chairman and secretary of the committee? It may be that such power can be conferred upon them by laws of this state or the rules of the

party; but it is certain that this has not yet been done. If this can be done, and should be done, the door would be opened wide for corrupt and partisan action. It might be certified that a prospective candidate has sufficiently complied with the laws of the state and the rules of a political party to become a candidate, and, upon further consideration, that holding might be recalled; and this might be done before that action could be reviewed in a court of competent jurisdiction and reversed in time for the candidate to have his name placed on the ticket. It would afford small satisfaction if, after the ticket had been printed with the name of the candidate omitted, [to] have a holding by the court that the name should not have been omitted.

Irby was a candidate for the state senate. This court pointed out that the senate was the tribunal in which Irby's qualifications would be determined, if he were elected, pointing out that Art. 5, § 11 of the Constitution of Arkansas provides that "Each house [of the General Assembly] shall appoint its own officers, and shall be the sole judge of the qualifications . . . of its own members." Obviously, the General Assembly borrowed from this constitutional language in wording § 4 of Act 3 of 1977. When this language is read in the light of the other language of the act I have italicized, the legislative intent that the matter of election and qualification of delegates be handled exactly as it had been prior to the adoption of § 3-615 is absolutely clear. Although party officials were involved in *Irby,* the same rules and principles have been applied with the same force and effect when the election commissioners are the election officials involved. See *Carroll* v. *Schneider,* 211 Ark. 538, 201 S.W. 2d 221. They should have the same impact here.

When the statutory language such as that italicized is used, the duties of the election commissioners were ministerial, not judicial, and they had no function to perform, other than to put Garner's name on the ballot after it was certified by the Secretary of State. *Carroll* v. *Schneider,* supra. To the same effect, *Higgins* v. *Barnhill,* 218 Ark. 466, 236 S.W. 2d 1011; *Cox* v. *Wentz,* 231 Ark. 205, 329 S.W. 2d 413; *Ridgeway* v. *Catlett, Chairman,* 238 Ark. 323, 379 S.W. 2d 277.

As recently as 1964, this court followed *Irby*, refusing to overrule it, saying that it was sound. *Ridgeway* v. *Catlett, Chairman*, supra. In *Ridgeway*, we held that one who had met the requirements prescribed for placing his name on the ballot was entitled to a writ of mandamus to require the State Democratic Central Committee to place his name on the ballot, even if he was ineligible to hold the office.

The Sebastian County Board of Election Commissioners should not have inquired into Garner's qualifications to serve as a delegate to the constitutional convention. Neither the circuit court nor this court should have done so. The matter was one for the constitutional convention only. It would be free to agree or disagree with the Sebastian County Board of Election Commissioners, the Circuit Court of Sebastian County, and even with this court, on the question of Garner's eligibility.[1] *Irby* v. *Barrett*, supra.

Although the wisdom of the action of the General Assembly, within the scope of its broad powers, is not a matter for judicial consideration, it may well be asked why the legislative branch, after making a drastic change in 1971, would make a change in 1977 which was applicable only to the constitutional convention provided for by its Act. 3. Constitutional conventions are peculiar to the American system and are an American institution. There is nothing else like them in our system of government, or perhaps any other. They are not a branch of government. They exercise no governmental powers. *Harvey* v. *Ridgeway*, supra; 16 Am. Jur. 2d 202, Constitutional Law, § 31. They are different and properly so. The position of delegate is derived from the power inherent in the people to alter, reform or abolish their government in such manner as they see fit. *Pryor* v. *Lowe*, 258 Ark. 188, 523 S.W. 2d 199; *Harvey* v. *Ridgeway*, supra. They are agents of the people for the purpose of acting in their stead in the exercise of their inherent, solemn power to propose alteration, reform or even abolition. *Harvey* v. *Ridgeway*, supra.

The legislature, in calling a constitutional convention,

---

[1]The word "qualifications" includes eligibility. *State, Ex rel., Evans* v. *Wheatley*, 197 Ark. 997, 125 S.W. 2d 101.

exercises powers in its role as the only agency through which an authorized consent of the ultimate sovereign, the whole people, the entire state, may lawfully be obtained. 16 Am. Jur. 2d 202, Constitutional Law, § 30. Having plenary power to call a convention, it has the power to provide for the election of delegates. 16 Am. Jur. 2d 202, Constitutional Law, § 30; 16 CJS 45, Constitutional Law, § 8. The manner in which the names of candidates for delegates to the convention shall be placed on the ballot is a matter controlled by applicable constitutional and statutory provisions. 16 CJS 45, Constitutional Law, § 8. Neither the Sebastian County Board of Election Commissioners nor the courts should invade the province of the General Assembly, or that of the constitutional convention, in matters pertaining to selection of delegates and determining their qualifications and eligibility.

I find the premises of the concurring opinion no more acceptable than those of the majority opinion. In the first place, the argument that the board of election commissioners had no authority to act in the matter was not, in my opinion, waived on appeal. Here again, the brief of appellant was filed on October 13, only four days after the hearing in the trial court. Appellant's brief contains this argument:

> Also, we should point out to the Court that Section 4 of Act No. 3 of the Extraordinary Sessions of 1977 provides that "the county election commissioners *shall* include on the ballots of the General Election of 1978 the names of the candidates for delegates to the Constitutional Convention as certified by the Secretary of State." The Election Commission, in this case, has taken it upon themselves to "decertify" Petitioner after said Commission received its letter of certification from the Secretary of State.

This was sufficient argument, in my opinion, to raise the issue in a case such as this.

In the next place, I reiterate that a judicial decision in this case would not have been binding on the constitutional convention, so the board of election commissioners should have left the determination of the question to the convention.

I would have reversed the judgment with directions to the trial court to direct the board of election commissioners to put Garner's name on the ballot.

I am authorized to state that Mr. Justice Byrd joins in this opinion.