The Honorable Phil Wyrick State Representative 11001 Alexander Road Mabelvale, Arkansas 72103-1905
Dear Representative Wyrick:
This is in response to your request for an opinion on your eligibility to run for and hold the state senate seat which will become vacant if current State Senator Vic Snyder is elected to the United States House of Representatives and resigns the position. You indicate that you currently serve in the Arkansas House of Representatives, District 52, and have done so for six years. (District 52 is within the senate district served by Senator Snyder.) You are the Democratic nominee for a fourth term in the Arkansas House unopposed at the upcoming general election in November. You pose the following questions:
 Can I wait until after the November general election to see what the outcome of Senator Snyder's congressional race is and then seek the Senate seat? I assume there will be a special election. Or, should I follow some other course of action?
As an initial matter, I should note that you are correct that if indeed Senator Snyder is elected to the U.S. Congress, and resigns his state senate seat mid-term, there would be a special election to fill that vacancy. See Arkansas Constitution, art. 5, § 6, and A.C.A. § 7-7-105. Presumably, Senator Snyder would resign his state senate seat sometime after election day, November 5, 1996, and before the date he takes the oath and is seated in the 105th U.S. Congress, which will be sometime in early January, 1997. Based upon this fact, and according to the time deadlines set out in A.C.A. § 7-7-105, and in light of the end of the year holiday season, the special election to fill the vacancy created by his resignation would be held sometime after January 1, 1997. Because you are unopposed for reelection to the Arkansas House at the November general election, you will be reelected to serve a term in the Arkansas House of Representatives beginning January 1, 1997. (See Arkansas Constitution, art. 8, § 6). It is this fact which leads you to inquire about your eligibility to run in a special election held in 1997 to fill a vacancy in a state senate seat, and to hold that seat if elected. You have not stated it in your request, but I assume that your question (i.e., "[c]an I wait . . .") refers to the timing of your possible resignation as a member of the Arkansas House. I assume that you are asking whether you may wait to resign your house seat until after the November general election so that you may determine the outcome of the U.S. House race (at which election you will be reelected as state house member), and then seek the Arkansas Senate seat. That is, I assume you are asking whether you may wait until after the November general election to resign your house seat, or whether it would be necessary for you to withdraw from nomination in your current house race in order to clearly be eligible to seek the senate seat in early 1997. I do not understand your question as being whether you can actually be reelected to the house and begin your new term (after January) and then resign to seek the senate seat. This in my opinion would clearly fall within constitutional prohibitions.
The primary constitutional prohibition implicated by your question is Arkansas Constitution, art 5, § 10, which provides as follows:
 No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State.
It has been held that this provision refers to a members eligibility "after he is seated," as opposed to the prohibition of art. 5, § 7, which refers to a person's eligibility to a take a seat in the General Assembly. Williams v. Douglas, 251 Ark. 555, 473 S.W.2d 896 (1971).[1]
In addition, in the case of Johnson v. Darnell, 220 Ark. 625,249 S.W.2d 5 (1952), the Arkansas Supreme Court held that a sitting state representative whose house term did not expire until January 1, 1951, could be elected as a municipal judge at the general election held in November, 1950, even though he was technically "elected to a civil office during his term" because, according to the court, the prohibition of art. 5, § 10 applies during the period of service under the election, and not to the electoral process by which the right to hold the office is acquired. Id. at 630. See also Jones v. Duckett, 234 Ark. 990,356 S.W.2d 5 (1962). These two cases provide some support for the proposition that even if you are reelected at the November general election, you may resign your house seat prior to January of 1997 and avoid the prohibition of art. 5, § 10. You may be deemed in that case not to be a "senator" or "representative" within the meaning of art. 5, § 10 at the time of the special election for the vacant senate seat. Support for this proposition may also be found in the most analogous case I have found from any other jurisdiction, Pickrell v. Myers, 89 Ariz. 167, 359 P.2d 757
(1961) (person elected to the legislature but who was purposefully absent when it was convened and was excepted by the credentials committee report did not become a member of the legislature within the constitutional provision disqualifying a member from any other office during the term or which he is elected and could be subsequently appointed by the Governor to a judgeship). Additionally, it is generally held that provisions in constitutions and statutes imposing qualifications should receive a liberal construction in favor of the right of the people to exercise freedom of choice in the selection of officers, and in favor of those seeking to hold office, and that ambiguities should be resolved in favor of eligibility to office. 67 C.J.S. Officers § 17. Because there is no controlling Arkansas precedent on the exact question you pose, however, it is impossible for me to predict the outcome of any challenge to your eligibility with any certainty. This is also true for another more compelling reason.
It is my opinion that a court of law would be without jurisdiction to entertain a challenge to your qualifications to take a senate seat under the provisions of Arkansas Constitution, art. 5, § 11, which provides that:
 Each house shall appoint its own officers, and shall be sole judge of the qualifications, returns and election of its own members. A majority of all the members elected to each house shall constitute a quorum to do business, but a smaller number may adjourn from day to day, and compel the attendance of absent members in such manner and under such penalties as each house shall provide. [Emphasis added.]
It has been held under this provision that a candidate for the state senate who had previously been adjudged by the Arkansas Supreme Court in a former case to be ineligible to hold public office in the state because of a criminal conviction (under art. 5, § 9) was eligible to have his name placed on the ballot for the position of state senator because, at least in part, art. 5, § 11 made the Senate the sole judge of his qualifications and eligibility, and, despite the previous Arkansas Supreme Court ruling, it would be for the senate to decide, if the candidate was elected, whether he could take his seat. Irby v. Barrett,204 Ark. 682, 163 S.W.2d 512 (1942). Similarly, in Evans v. Wheatley,197 Ark. 997, 125 S.W.2d 101 (1939), an unsuccessful candidate for a state senate seat sued to oust the successful candidate, on the basis that he was ineligible to his senate seat because of his criminal conviction (under art. 5, § 9). The Senate had seated the successful candidate despite a felony conviction. The court held that the senate was the sole judge of his eligibility under art. 5, § 9, stating that: "[i]t may be that the senate in passing upon his eligibility or qualifications found that the crime with which he was charged was not infamous. But be that as it may, the action of the senate in that regard and in seating him is final, and the trial court in this case was without jurisdiction to determine that matter." 197 Ark. at 1001. See also Pendergrass v. Sheid,241 Ark. 908, 411 S.W.2d 5 (1967) (holding that the judicial branch is without jurisdiction of election contests involving seats in the General Assembly, citing Irby, and Evans, supra); Reaves v. Jones, 257 Ark. 210,515 S.W.2d 201 (1974) (court did not have jurisdiction to hear challenge to senate's expulsion of member convicted of a felony); and 16 C.J.S.Constitutional Law § 187, n. 27.
Presumably, if the senate is the sole judge of its members' eligibility under art. 5, § 9, it would be the sole judge of its members' eligibility under art. 5, § 10 as well. This sole jurisdiction of the Senate to determine the qualifications of its members does not appear in Arkansas to be entirely absolute, however. It was held in Matthews v. Bailey,Governor, 198 Ark. 830, 131 S.W.2d 425 (1939) that the vote of a state senator on a particular piece of legislation was invalid because the state senator had been appointed to fill the vacant senate seat by the Governor, which contravened the constitutional requirement for a special election. The court invalidated the senator's vote, despite the fact that the senate had seated him for purposes of art. 5, § 11. It appears, however, that where mere eligibility to hold the seat is at issue, (rather than the want or lack of regularity of the method of appointment of the senator) the senate will be the sole judge of eligibility and a court challenge will not be entertained. See Pendergrass, supra at 909.
The Arkansas Senate may conduct proceedings to determine the eligibility of its members pursuant to its own internal rules and regulations. It may be persuaded by the case law cited herein, or it may totally disregard and disagree with those authorities, and the courts, in my opinion, will be powerless to intervene. See Irby and Evans, supra. It is thus difficult for me to predict as a legal matter the possible outcome of any challenge to your eligibility.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] Article 5, § 7, which prohibits any person holding any lucrative office under this state from being eligible for a seat in the General Assembly, appears to envision and prohibit the incompatibility which arises from dual-office holding. Williams v. Douglas, supra. It appears that under this provision, a resignation from a lucrative office would be effective to render a candidate eligible for a seat in the General Assembly. In this regard, art. 5, § 7 is more lenient than art. 5, § 10, which prohibits a sitting state senator or representative from being elected or appointed to any civil office during his term, whether he or she resigns the senate or house seat or not. See generally, Martindalev. Honey, 259 Ark. 416, 533 S.W.2d 198 (1976) (Fogleman and Jones, dissenting), and 67 C.J.S. Officers § 24, n. 34. I assume, therefore, that art. 5, § 7 is not implicated by your question, as you do not intend or seek to hold both the office of state representative and state senator simultaneously.