The Honorable Harmon R. Seawel State Representative 5761 Highway 328 West Pocahontas, Arkansas 72455-8661
Dear Representative Seawel:
This is in response to your request for an opinion on two questions regarding the eligibility of members of the House of Representatives to run for a vacant state Senate seat occasioned by the resignation of former Senator Nick Wilson. You note that a special election to fill the state Senate vacancy will be held early this year. Your two questions in this regard are as follows:
 1. If the Governor calls a special election, presumably in early 2000, are members of the House of Representatives eligible to run for the Senate?
 2. If so, must we resign our House seats, or is resignation required only if elected to the Senate?
RESPONSE
It is my opinion that the answer to your first question is "no." An answer to your second question is therefore unnecessary.
Question 1 — If the Governor calls a special election, presumably inearly 2000, are members of the House of Representatives eligible to runfor the Senate?
I will note as an initial matter that the current members of the House of Representatives were elected at the November 1998 general election, their two-year terms began in January of 1999 and they are to serve until their successors are elected and qualified. See generally Arkansas Constitution, art. 5, § 2 and art. 8, as amended by Amendments 23 and 45. See also, art. 19, § 5. The successors to these members will be elected in November 2000, and will "qualify" sometime in January 2001.See generally, Op. Att'y Gen. No. 97-101. The special election to fill the vacant Senate seat will be held May 2, 2000, and the new Senator will be sworn in shortly thereafter.
With regard to the eligibility of current House members to run for the Senate, the relevant constitutional provision is Arkansas Constitution, art. 5, § 10, which provides:
 No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State.
A recitation of the history of this provision, and its intended effect, will be helpful in addressing your question.
It has been stated with regard to art. 5, § 10 that:
 The people in creating the offices of Representative and Senator had the right to assure unto themselves that a person so elected would use the office for purposes of representing the people rather than for self promotion such as seeking an election or appointment to office.
Williams v. Douglas, 251 Ark. 555, 559, 473 S.W.2d 896 (1971). See alsoWood v. Miller, 154 Ark. 318, 242 S.W. 573 (1922) and Fulkerson v.Refunding Board of Arkansas, 201 Ark. 957, 147 S.W.2d 980 (1941).
A review of the Williams v. Douglas case puts the history of the article 5, § 10 prohibition in perspective. In that case, the Arkansas Supreme Court traced the history of this provision through each of Arkansas' four prior constitutions. The court noted that in Arkansas's first Constitution, the Constitution of 1836, it was provided that: "No senator or representative, shall during the term for which he shall have been elected, be appointed to any civil office under this State which shall have been created or the emoluments of which shall have been increased during his continuance of office, except to such office as shall be filled by the election of the people." Id. at 559, citing Constitution of 1836, art. IV, § 14.
The 1861 Constitution contained a similar provision, vis: "No member of the General Assembly shall be elected or appointed to any civil office in this State, which shall have been created, or the emoluments of which shall have been increased, whilst he was a member thereof, except he be elected to such office by a vote of the people, and that no member of the General Assembly shall be elected to any office within the gift of the General Assembly during the term for which he shall have been elected."
The Constitution of 1864 contained the following provision: "No Senator or Representative shall, during the term for which he shall have been elected, be appointed to any civil office under this State which shall have been created, or the emoluments of which shall be been increased, during his continuance in office, except to such offices as shall be filled by the election of the people."
The court in Williams then quoted a provision of the Constitution of 1868, (the so-called "Carpet-bag" Constitution). It prohibited certain officers from being elected to the General Assembly, but did nothing to prohibit General Assembly members, once elected, from being appointed to other offices or positions. This prompted the court in Williams to note that: "The experience of this State with the "carpet-baggers" and the Brooks-Baxter War are history but it was after those experiences that the people enacted the PROHIBITION set forth in Art. 5, § 10. . . ." Id. at 561.
The Arkansas Supreme Court, in a similar vein, had earlier stated that: "The purpose of [art. 5, § 10] is plain. In many of the States the constitution merely prohibits legislative representatives, during their terms, from holding an office created during that term, or where the salary of the office is increased during the term. But the language of our Constitution is broader." Wood v. Miller, 154 Ark. 318,242 S.W.2d 573 (1922). (Emphasis added.)
Thus, this provision of our constitution prohibits not only the acceptance of a position which was created or enhanced during the Representative's term, but prohibits the acceptance of any civil office
during the legislator's term. It does not matter, under the current art. 5, § 10 prohibition, that the civil office is an elected one. The office of State Senator is, of course, a "civil office under this State." In my opinion, therefore, a sitting member of the Arkansas House of Representatives, to whom art. 5, § 10 is applicable, may not be elected to the position of State Senator during the house term for which he or she has been elected. But cf. Op. Att'y Gen. 96-245 (House member unopposed for reelection but never seated for new term eligible to run in special election to fill vacant Senate seat held after expiration of his prior term).
In my opinion, additionally, the resignation of a member of the House of Representatives does not remove this ineligibility. Although this point is not discussed in any majority opinion of the Arkansas Supreme Court, it was noted in a dissenting opinion in Martindale v. Honey,259 Ark. 416, 533 S.W.2d 198 (1976), as follows:
 To illustrate the importance of the distinction between the question at issue and the question posed and answered by the majority, I point out that if Art. 5, § 10 is applicable, a senator or representative could not even resign before the expiration of his term and accept appointment as a deputy prosecuting attorney. People v. Lennon, 86 Mich. 468, 49 N.W. 308 (1891); Richardson v. Hare, 381 Mich. 304, 160 N.W.2d 883 (1968); State v. Sutton, 63 Minn. 147, 65 N.W. 262, 30 LRA 630, 56 Am. St. Rep. 459 (1895); Chenowith v. Chambers, 33 Cal. App. 104, 164 P. 428 (1917); Baskin v. State, 107 Okla. 272, 232 P. 388, 40 A.L.R. 941 (1925); Annot 5 A.L.R. 117, 120 (1920), S 40 A.L.R. 945 (1926). Cf. Jones v. Duckett, 234 Ark. 990, 356 S.W.2d 5; Johnson v. Darnell, 220 Ark. 625, 249 S.W.2d 5.
259 Ark. at 423, Fogleman and Jones, J.J., dissenting.
My predecessor reached a similar conclusion in Op. Att'y Gen. 96-245, n. 1, stating that art. 5, § 7 (another constitutional provision) is more lenient that art. 5, § 10, in that the latter "prohibits a sitting state senator or representative from being elected or appointed to any civil office during his term, whether he or she resigns the senate or house seat or not." Id. at 3, n. 1, relying on Martindale, supra, and 67 C.J.S. Officers § 24, n. 34. This conclusion is consistent with the weight of authority in other states with similar provisions. Id. It is consequently my opinion that resignation of a House member under the circumstances you describe will not restore his or her eligibility under art. 5, § 10.
Question 2 — If so, must we resign our House seats, or is resignationrequired only if elected to the Senate?
In light of the discussion above, an answer to this question is unnecessary.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh