### JAMES v. E. WEINSTEIN & SONS.*
(No. 11950.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 5, 1927.

Appellant's Motion for Rehearing Overruled Dec. 10, 1927.

1. **Injunction ⬡59(1)—Lessees held entitled to decree allowing them to make repairs to render building safe, where lessor insisted on erecting new building.**

Where leased building was declared unsafe by city building inspector, but could be rendered safe by repairs, and lessor refused to repair, insisting on building new building, lessees *held* entitled to decree allowing them to make repairs.

2. **Injunction ⬡189—Court may find that building declared unsafe by city inspector was unsafe, but could be rendered safe by repairs, in lessees' suit to enjoin interference with use of building.**

In suit by lessees against lessor and city to restrain defendants from interfering with plaintiff's use of leased building after city building inspector had ordered lessor to make certain repairs to make building safe and lessor insisted on erecting new building, trial court *held* within judicial discretion in finding building unsafe, but that it could be made safe by repairing, since city's definition of nuisance set forth in ordinance is not binding on courts, and question whether building was nuisance remained justiciable question, notwithstanding determination of building inspector.

On Appellant's Motion for Rehearing.

3. **Jury ⬡28(6)—Party to equity suit not demanding jury cannot complain that she was deprived of jury trial.**

In suit in equity, party who made no demand for jury cannot complain that she was deprived of jury trial, since court was authorized to act on assumption that all parties were satisfied with trial before court.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by E. Weinstein & Sons against Mrs. Sallie James and another. Judgment for plaintiffs, and the named defendant appeals. Affirmed.

Simpson & Collins, of Fort Worth, for appellant.

McLean, Scott & Sayers, of Fort Worth, for appellees.

BUCK, J. E. Weinstein & Sons, a partnership composed of E. Weinstein, George Weinstein, and Sol Weinstein, all of whom reside in Tarrant county, sued out a petition for a writ of injunction against Mrs. Sallie James, a feme sole, also of Tarrant county, and the city of Fort Worth. The petition alleged: That E. Weinstein & Sons were conducting a retail hardware store in the city of Fort Worth and had been so conducting it for a period of 6 years. That their place of business was the corner of Houston and Weatherford streets, in the city of Fort Worth, in a two-story building owned by Mrs. Sallie James. That plaintiffs had a lease upon the premises fronting 25 feet or more on Houston street and extending back along Weatherford street approximately a distance of 100 or 105 feet. They alleged: That on the ground floor of said building and fronting on Houston street and extending east 60 feet or more, the plaintiffs conducted a store for the retail sale of hardware, and that they carried a large stock of merchandise. That the remaining portion of said premises and building on the ground floor had been occupied for several years by sub-

---

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted February 29, 1928.

tenants, all with the knowledge and consent of the owner of said premises. That the lease last executed by defendant Mrs. Sallie James to the plaintiffs was dated April 21, 1925, and was for the term of 3 years, beginning June 8, 1925, and carrying with it an option granted to the plaintiffs that they might renew said lease at or before its maturity for an additional 2 years on the same terms and conditions specified in the lease. The lease provided for a monthly rental of $225 to be paid by the plaintiffs, and also provided that in the event of a surrender of the second floor of the building by the then tenant occupying the same, and in the event of the repossession of the same by the lessor, the plaintiffs should have the right to use and occupy the same for an additional rental of $25 per month, until the expiration of the lease on the first floor, to wit, June 8, 1928. Plaintiffs further represented that after the execution of said lease the occupant of the second floor of said building surrendered the possession thereof to the lessor, and that plaintiffs took possession of the same and paid to Mrs. James the full and complete sum of $250 monthly for the entire building, which she accepted.

Plaintiffs further alleged that prior to the filing of this petition they exercised their option granted unto them under the terms of said lease to renew the same for the additional 2 years at the same terms and under the same condition originally conveyed to them as in said lease specified, and that under the terms of said lease they are entitled to the possession, use, and control of the entire building until June 8, 1930, subject, of course, to their continued payment of the rental of $250 per month, which they stand ready, willing, and able to pay.

Plaintiffs further alleged: That the defendant city of Fort Worth, acting by and through its employee, W. W. McKeithen, its city building inspector, some 2 or 3 months before the filing of this suit for injunction, inspected the building hereinabove mentioned and notified the owner, Mrs. James, to cause certain repairs to be made in order to make said building safe. That Mrs. James refused to comply with the request of said building inspector and has wrongfully taken the position that if said building is unsafe that it should be torn down entirely and a new building erected on said premises. That said defendant, Mrs. James, has wrongfully begun making preparations for the tearing down completely of said building with the intent on her part of erecting on said premises an entirely new building, and has demanded of the plaintiffs a cancellation of their lease upon said premises and building, and has demanded of them a rental of $300 per month as rental for the new building when completed.

Plaintiffs alleged that the building was safe in the condition it now was, and that it was in the same condition at present as it was when they first leased it. In the alternative, the plaintiffs alleged that, if the building be in any particular unsafe or defective, same could be repaired without in any manner molesting or depriving plaintiffs of their rights to the quiet, peaceable, and unmolested use of said premises, and that said building is not now nor has it ever been, as contended by Mrs. Sallie James, in such an unsafe condition as to require that the building be torn down.

A prayer for injunction was included in said petition, asking that the city of Fort Worth, its officers, employees, building inspector, etc., and Mrs. Sallie James be restrained from in any way interfering with the free and unmolested use of the building by plaintiffs.

The defendant city of Fort Worth answered, in brief, stating that the building was located in the heart of the business section of Fort Worth, and that many thousand people pass within a few feet of its walls every day, and that the condition of said building creates a public emergency and presents an imminent and controlling exigency requiring that the defendant exercise its police power to guard said property to prevent impending injury; that the walls were too weak to hold the weight that is placed on them, and that the walls and ceiling were defectively constructed, in that proper safeguards were not taken against fire hazards, and said building in its present condition is a fire trap. It pleaded section 103, pt. 17, c. 1, tit. 4, of the Revised Ordinances of the city of Fort Worth, with reference to unsafe buildings and the duty of the city to declare said building a nuisance and abate the same.

Mrs. Sallie James answered, in effect stating that the building could not be repaired so as to make it safe; that it had been some 50 years since its erection; and that it was a constant menace to the safety of the public passing along the streets near to and adjacent to the building, and to persons entering and in said building.

A trial was had in the district court, and the court found that said building, as a whole, was dangerous to the public passing along the streets adjacent thereto, and entering the building. But further found that the building could be repaired and made safe for the public by removing the second story thereof and repairing the first story. The defendant Mrs. James was given the right to remove and remedy the dangerous condition of said building by removing and taking down the second story and by bracing and repairing the first story so as to make the same safe for the public. She announced to the court that she declined and would continue to decline to make such changes, but would tear down and remove such building altogether. The court decid-

ed that the plaintiffs having a right of oc-
cupancy under said written lease of said
building for practically 3 years from the
date of the hearing, had the right, the
owner declining to make such changes and
repairs, to repair the building themselves,
and ordered that the plaintiffs, if they so
elected, should begin not later than Septem-
ber 19, 1927, and continue with reasonable
dispatch towards making such alterations
and repairs as to make the building safe and
meet the requirements of the building ordi-
nance of the city of Fort Worth. The de-
fendants city of Fort Worth and Mrs. James
were each enjoined and restrained from in-
terfering with or molesting said plaintiffs
from making said repairs on said building
as above set forth. It was further decreed
that the plaintiffs should execute a bond in
the sum of $3,000, as required by law, before
such injunction should be issued, which was
done. The defendant Mrs. Sallie James has
appealed.

### Opinion.

[1] The contention of appellant is: That
the trial court erred in its judgment, which,
in effect, granted to the plaintiffs below the
right and authority to make substantial al-
terations in the structure of the building, con-
trary to the agreement made and entered in-
to by the lessor and the lessees in their rent-
al contract, and without the permission and
consent given by the lessor, either in writing
or orally. That a tenant occupying a build-
ing under a written lease, providing that the
lessee shall not have the right to make any
alterations or improvements in the building
without the consent of the lessor, has no au-
thority in law, and such cannot be judicially
conferred upon him, to destroy one story of
the building and alter, improve, and repair
the remainder of the building in such man-
ner as to completely change its identity, un-
less such consent is first given by the land-
lord in writing, as provided by the lease.
It is further urged that even if the lease
contract was silent as to alterations, im-
provements, and repairs, a court could not
confer upon a tenant the right to destroy
part of the building and allow material al-
terations, improvements, or repairs to be
made to the remainder of the building in
such a way as to completely change the iden-
tity of the building, unless the consent of
the landlord was first given to do so.

Appellant cites a number of authorities
tending to support this generally accepted
proposition, such as Halsell v. Scurr, 297 S.
W. 524, by this court; Webster v. Nosser,
2 Daly (N. Y.) 186, 33 How. Prac. 136; May-
er v. Texas Tire & Rubber Co., 223 S. W. 874,
by this court; 24 Cyc. 1094; Cawker v. Trim-
mel, 155 Wis. 108, 143 N. W. 1046, Ann. Cas.
1915C, 1005; 16 R. C. L. 733, § 225.

Appellees, on the other hand, urge: That
by the terms of the lease contract the les-

sees agreed and obligated themselves to take
good care of the property and its fixtures,
and suffer no waste, and at their own ex-
pense and cost keep said premises in good re-
pair; keep the plumbing work, closets, pipes,
and fixtures belonging thereto in repair, keep
the water pipes and connections free from ice
and other obstructions, to the satisfaction
of the municipal and police authorities, and
that the "lessee shall promptly execute and
fulfill all the ordinances of the city corpora-
tion, applicable to said premises, and all or-
ders and requirements imposed by the board
of health, sanitary and police departments,
for the correction, prevention, and abatement
of nuisances in, or upon, or connected with
said premises during said time, at lessees' ex-
pense." That when the city, through its build-
ing inspector, found and determined that the
building in its present condition was unsafe to
the public going along the sidewalks adjacent
thereto, and to customers and others entering
said building, thus rendering it a nuisance, it
became a question for the trial court to deter-
mine what steps were necessary to be taken
to abate the nuisance with due regard to
the rights and interest of the parties to the
lease contract. That the court having so de-
termined from the evidence adduced, and
after a trial at which all of the parties were
present, either personally or by counsel, and
its judgment reached being fully sustained
by the evidence, such judgment cannot be dis-
turbed. It is urged that the opinion of the
building inspector is not a binding judicial
determination of the issue as to the condition
of the building, in order for it to be safe
and secure. That such question is for de-
termination by a court of competent jurisdic-
tion. That the right of a municipal govern-
ment in the reasonable exercise of its right
of eminent domain and to abate nuisances
for the benefit of the public is paramount
and superior to the right of the landowner
or lessee, and the enforcement and operation
thereof does not violate the Constitution of
Texas concerning the confiscation of one's
property without due process of law. That
the power given municipalities to abate nui-
sances is not an unrestricted power, but
must be limited to the necessity of the case,
and the building should not be demolished
or totally destroyed if the nuisance alleged
against it can be abated without such de-
struction.

In Crossman v. City of Galveston, 112
Tex. 303, 247 S. W. 810, 26 A. L. R. 1210, by
the Supreme Court, opinion by Chief Justice
Cureton, the court held: That the denial of
a right to repair a building, lawfully erected,
so as to keep it fit for use, was a denial of
the enjoyment of a property right, and that
whether anything not a nuisance at common
law or per se is in fact so, depending on the
use to which it is put or its state or repair,
is a justiciable question, determinable only

by a court of competent jurisdiction. That a city's power to abate a nuisance is not unrestricted, but abatement must be limited to the necessities of the case, so that a building, lawfully erected, should not be demolished if the nuisance alleged against it can in any other way, as by cleaning or repair, be abated. Joyce on Nuisances, § 334; Miller v. Burch, 32 Tex. 209, 5 Am. Rep. 242; Health Dept. v. Dassori, 21 App. Div. 348, 47 N. Y. S. 641; Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387, by the Supreme Court, opinion by Chief Justice Phillips. The last-cited case holds that the right to acquire and own property and to deal with it and use it as the owner chooses and so long as the use harms nobody is a natural right and does not owe its origin to the Constitution.

In City of Texarkana v. Reagan, 112 Tex. 317, 247 S. W. 816, also by the Supreme Court, the court held that an ordinance, in so far as it makes final the orders of its council declaring a building a nuisance, and ordering its summary abatement, is void; that whether a building is a nuisance is a justiciable question, determinable alone by the court or jury trying the case.

[2] The validity of the ordinance invoked here is not attacked; therefore we will assume that the building inspector of the defendant city was in the exercise of his lawful authority in determining that said building was unsafe, and should be made safe by repairs or torn down. The trial court found that the building was unsafe in its present condition, but could be made safe in the manner above indicated. In so finding, the trial court was properly acting within his judicial discretion. In the case of City of Texarkana v. Reagan, supra, the court said:

"If the building was in fact a nuisance, the city may defend on that ground, but its own definition of a nuisance, set forth in its ordinance, is not conclusive and binding on the courts. The question as to whether or not the building is a nuisance remains a justiciable question."

The Supreme Court, in the Spann Case, said:

"The public health, the public safety, and the public comfort are properly objects of this high importance; and private rights, under reasonable laws, must yield to their security."

The court further said:

"Police power is founded in public necessity, and only public necessity can justify its exercise. The result of its operation is naturally, in most instances, the abridgment of private rights. Private rights are never to be sacrificed to a greater extent than necessary."

We are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered.

## On Appellant's Motion for Rehearing.

Appellant Mrs. Sallie James files a rather extended and insistent motion for rehearing, in which the contention is made, for the first time, that the hearing below was in chambers and on the question as to the right of appellees Weinstein to a temporary restraining order; that the trial court proceeded to dispose of the case on its merits, and rendered a judgment in the nature of a permanent injunction. The record does not support these contentions. The application of appellees, filed August 29, 1927, did ask for a temporary restraining order against appellant and the city, and that upon final hearing said injunction be made permanent. Both the city and Mrs. James joined issues, in lengthy pleadings. On September 14th, sixteen days after the filing of the petition, and before any restraining order was granted, the hearing was had. The caption of the transcript shows this hearing was had in term time; and the judgment recites that:

"'Plaintiffs' petition for injunction having been presented to the court [not merely to the judge thereof] in the above entitled and numbered cause and same having been set down for hearing, by order of the court, all parties appearing in person or by attorney, and evidence having been fully heard on the merits of such application, and the law having been presented by the attorneys for the respective parties to the court for his consideration, the court is of the opinion and finds as follows," etc.

There is nothing in the record that suggests that the hearing was had in chambers, but the entire record discloses that the court was in session when the hearing was had. There is nothing in the record to support the contention that the hearing was had on the application for a temporary restraining order. The record supports the conclusion that the hearing was had on that part of the petition asking for a permanent injunction.

[3] Appellant complains that she was deprived of a jury trial, but the record fails to show that a demand for a jury was made. Evidently all parties, so far as the record discloses, acquiesced in a trial before the court.

Therefore most of the objections urged in this motion are disposed of by the record of the case. We believe that the trial court was authorized to act upon the assumption that all parties were satisfied with the trial before the court, and a trial upon the question as to whether or not a permanent restraining order should be granted.

The motion for rehearing is overruled.