HAYNES *v.* RIALES.

5-955                                            290 S. W. 2d 7

Opinion delivered May 14, 1956

*Kenneth C. Coffelt,* for appellant.

*Louis Tarlowski* and *Catlett & Henderson,* for appellee.

LEE SEAMSTER, Chief Justice. Appellant, Roy M. Haynes, brought suit in the Pulaski Chancery Court, First Division, to enjoin the appellee, Roy L. Riales, from receiving money as an auditor for the Arkansas Burial Association Board. The complaint reads as follows:

"The plaintiff, for his cause of action herein against the defendants, and each of them states:

"He is a resident citizen of Polk County, Arkansas, and is a member of the Arkansas House of Representatives from said county. He brings this suit as a taxpayer of the state, for himself as a taxpayer and for the taxpayers of Arkansas.

"The defendant Riales is a member of the Arkansas State Senate, representing the Sixth Arkansas Senatorial District, and has been such since January, 1955, having been elected and qualified to serve for a period of four years ending January, 1959.

"The Arkansas Legislature of 1953 enacted Act 91, which is known as the Arkansas Burial Association Act, and such Act is now, and has been since its passage and approval, in full force and effect. Said Act created what is known as the Burial Association Board, conferring upon said board certain powers, directives and authority, and provided how said board should be selected. The defendants, Nelson, Lattimer, Holmes, Shinn, Mays, Howard and McNabb are now, and have been since the passage of said act, the duly appointed, qualified and acting members of said Burial Association Board. The defendant Simms is the Executive Secretary of said Board.

"Plaintiff alleges, that the said Burial Association Board as provided for under the terms of said act, is a State Agency; that said board is an administrative State Board, whose duties are to carry out the terms of said act as enacted by the State Legislature; that the funds created by, and expenditure of such funds as authorized under the terms of said act, are public funds, and subject to control by the State Legislature; that the positions of employment, including the board members, created under the terms of the Act, are civil positions of employment of, and by the state, and constitute civil offices of the state.

"Defendant, Riales, has continuously since being sworn in as State Senator, as herein alleged, been employed as field Auditor by the defendant members of said Burial Association Board, and is being paid for his services as such by them, and by the herein named defendant Executive Secretary of said board. The salary and expenses being paid defendant Riales by defendant board members and Executive Secretary, as alleged, amount to approximately $8,000 annually. Defendant Riales is receiving said moneys as said auditor while at the same time receiving his salary from the State of Arkansas as State Senator from the Sixth District. Plaintiff alleges, that unless restrained, the defendant Riales, will continue to receive said moneys from said board as one of its field auditors while serving as State Senator at the same time, and for such practice to continue, will cause this plaintiff and the other taxpayers of the state to suffer irreparable damages.

"Plaintiff alleges, that for the defendant Riales to receive said moneys from the defendant, Burial Association Board members and said Executive Secretary, and for them to pay out to him said moneys, as herein alleged, is in strict violation of Sec. 10, Art. 5 of the Constitution of the State of Arkansas which provides, 'no senator or representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this state.'

"Plaintiff alleges, that the moneys already paid out by the said defendant board members and Executive Secretary, to defendant Riales, should be recovered for the taxpayers, and that judgment should be had against the defendants, for the taxpayers of the State for said moneys already paid out to defendant Riales since he has been State Senator, as alleged; that the defendants should give an accounting to this court as to the exact amount of moneys paid to and received by Riales, as alleged, since he has been serving as State Senator."

Appellees demurred on grounds (1) that the Court had no jurisdiction of the subject of the action; (2) that the appellant did not have legal capacity to sue; and (3) that the complaint did not state a cause of action. The trial court sustained the demurrers and dismissed the complaint. This appeal follows.

The sole question presented here is whether the appellee, Roy L. Riales, has been appointed to any civil office under this State. The demurrer admitted that he was elected, and is now serving as a State Senator from the Sixth Arkansas Senatorial District; that he was when elected, and is now serving in the capacity of an auditor for the Arkansas Burial Association Board.

The Arkansas Burial Association Board was created by Act 91 of the General Assembly of 1953. By reference to this act, Section Four authorizes said Board to employ and fix the duties and salaries of an executive secretary, two auditors, and such other clerical assistance as may be necessary to carry out the provisions of the Act.

The question presented is whether the position of auditor for Arkansas Burial Association Board is a civil office or a mere employment. In the case of *Rhoden* v. *Johnston*, 121 Ark. 317, 181 S. W. 128, the court discussed at length the necessary provisions of the law to create a civil office. The court in the above case cited with approval the following cases and the definition there given of a public office.

"An apt definition is given by the Supreme Court of the United States in the case of *United States* v. *Hartwell,* 6 Wall. 385, as follows: 'An office is a public station or employment, conferred by the appointment of government, and embraces the ideas of tenure, duration, emolument, and duties.' "

"The same court, in *Hall* v. *Wisconsin,* 103 U. S. 5 said: 'Where an office is created, the law usually fixes the compensation, prescribes its duties, and requires that the appointee shall give a bond with sureties for the faithful performance of the service required.'

"The Supreme Court of Mississippi, in *Shelby* v. *Alcorn,* 36 Miss. 273, gave a definition which has met our approval, as follows: 'And we apprehend that it may be stated as universally true, that where an employment or duty is a continuing one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it is an officer.'

"In *United States* v. *Maurice,* 2 Brock. 96, Chief Justice Marshall said: 'Although an office is "an employment," it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer.' "

In the recent case of *Bean* v. *Humphrey, State Auditor,* 223 Ark. 118, 264 S. W. 2d 607, this court said:

"In distinguishing between an officer and an employee, and pointing out the elements or criteria necessary to each, the text writer in 42 *Am. Jur.,* page 888, (in Sections 10 to 12 inclusive), says: 'A public officer is one whose functions and duties concern the public, and who exercises some portion of the sovereign power of the state. In this and in other respects he is to be distinguished from a private officer. The latter holds his position not by election or official appointment, but by contract, and his duties are performed at the instance and for the benefit of the individual or corporation employing him . . .

" 'Generally speaking, the nature of the relation of a public officer to the public is inconsistent with either a property or a contract right. One contracting with the government is in no just and proper sense an officer of the government.

" 'There are points of difference between a public office and a public contract. As observed above, a public office embraces the idea of tenure, duration, and continuity. The duties connected therewith are continuing and permanent. A public contract, on the other hand, is limited in its duration and specific in its objects. Its terms define and limit the rights and obligations of the parties, and neither may depart therefrom without the consent of the other. Unlike a public office, a public contract does not involve a delegation of a function of sovereignty. The fact that the duties of a particular position or governmental function do not depend on. contract is itself one of the criteria of a public office.

" 'Public office, as hereinbefore defined and characterized, is in a sense an employment, and is very often referred to as such. But there is a distinction between a public office and a public employment which is not always clearly marked by judicial expression and is frequently shadowy and difficult to trace. The distinction, however, is one which in many instances becomes important and which the courts are called upon to observe. Although every public office may be an employment, every public employment is not an office, and the word "employee" as used in statutes has in many cases been construed as not including officers.

" 'When a question arises whether a particular position in the public service is an office or an employment merely, recourse must be had to the distinguishing criteria or elements of public office . . . Briefly stated, a position is a public office when it is created by law, with duties cast on the incumbent which involve some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other

hand, is a position in the public service which lacks sufficient of the foregoing elements or characteristics to make it an office.' "

Act 91 of 1953 does not set out the following: the term or tenure of the auditors; the length of time the auditors are to serve in their respective positions; the emoluments and duties of the position. The Burial Association Board is merely authorized to employ and fix the duties and salaries of the auditors—this to be done by contract or agreement and may be discontinued at the pleasure of the board.

This act does not make the position of auditor a civil office, but rather an employment subject to the authority of the Burial Association Board. The act further provides, "the operation of the Burial Association Board and the carrying out of the functions set out in this Act shall be at no expense to the State of Arkansas."

Finding no error, the decree sustaining the demurrer is affirmed.