The Honorable Mike Huckabee, Governor State Capitol Little Rock, AR 72201
Dear Governor Huckabee:
You have submitted additional information concerning one of the positions at issue in Attorney General Opinion 2000-334 involving Article 5, Section 10 of the Arkansas Constitution.[1] I concluded in that opinion that State Senator Jim Scott's resignation from the Senate and his acceptance of the position as Director of the Arkansas Bureau of Standards was contrary to art. 5, § 10. You have asked whether the additional information would change the result of that opinion; specifically, whether in light of this information the position in question is a civil office within the prohibition of art. 5, § 10. See
n. 1, supra.
RESPONSE
Although a persuasive argument can be made in support of your submission that the Director of the Bureau of Standards is not a "civil office" following the "Type 2" transfer of the Arkansas Bureau of Standards to the State Plant Board, it is my opinion that this matter is not free from doubt due to the unique circumstances and the absence of any decisive case law. The type 2 transfer certainly makes a difference in the analysis, as discussed below, and you were correct to bring it to my attention. I am unable, however, to agree with you that the transfer changes the result reached in the earlier opinion. Because the question is moot, Senator Scott's term having expired January 1, 2001, a conclusive resolution may not be critical at this point. In any event, the issue remains an open question, in my view, absent a judicial determination.[2]
As you note, Acts 610 and 624 of 1993 by identical acts transferred the Arkansas Bureau of Standards (hereinafter "Bureau") to the State Plant Board by a "type 2 transfer." See Section 1 of Acts 1993, Nos. 610 and 624.[3] According to the Code section governing this type of transfer (A.C.A. § 25-2-105 (Repl. 1996)), when a department is transferred by a type 2 transfer "its prescribed powers, duties, and functions, including rule-making, regulation, and licensing; promulgation of rules, rates, regulations, and standards; and the rendering of findings, orders, and adjudications are transferred to the head of the principal department
into which the department, institution, or other agency, or part thereof, has been transferred." Id. at subsection (b) (emphasis added). This emphasized language in essence forms the basis for the argument that the position of Director of the Arkansas Bureau of Standards is not a "civil office" following the type 2 transfer. If the duties of the Bureau have been transferred to the Director of the State Plant Board, and the Bureau Director's duties are now determined by the Plant Board Director, then arguably one of the key factors in the "civil office" determination is absent, i.e., duties fixed by law. See Op. Att'y Gen. 2000-334 at 3-4, and cases cited therein. It has been stated, generally, that:
 [a]n office is a public charge or employment, in which the duties are continuing and prescribed by law, and not by contract, and the office holder is invested with some of the functions pertaining to sovereignty, or having some of the powers and duties which inhere with the legislative, judicial, or executive departments of the government.
63C Am. Jur. 2d Public Officers and Employees § 1 (1997).
See also 67 C.J.S. Officers § 9 (1978) (stating that "[i]t is necessary, in order that a position constitute an office and the incumbent thereof an officer, that the powers conferred and the duties to be discharged be conferred and defined by law. . . . Thus, a position, the duties of which are undefined and which can be changed at the will of the superior, is not an office but a mere employment. . . .")
The element of authority or duties conferred by law is thus one of the essential characteristics of a public office. 63C Am. Jur. 2d, supra at § 3. This is reflected in Haynes v. Riales, 226 Ark. 370, 290 S.W.2d 7
(1956), wherein the Arkansas Supreme Court determined that the auditor for the Arkansas Burial Association Board occupied a position of employment rather than an office. The court summarized the distinction between a "public office" and a "public employment" as follows (quoting from Bean v. Humphrey, 223 Ark. 118, 264 S.W.2d 607 (1954) and 42 Am.Jur.):
 `When a question arises whether a particular position in the public service is an office or an employment merely, recourse must be had to the distinguishing criteria or elements of public office . . . Briefly stated, a position is a public office when it is created by law, with duties cast on the incumbent which involve some portion of the sovereign power and in the performance of which the public is concerned, and which also are continuing in their nature and not occasional or intermittent; while a public employment, on the other hand, is a position in the public service which lacks sufficient of the foregoing elements or characteristics to make it an office.'
226 Ark. at 375-376.
The Arkansas Burial Association Act did not fix the duties and salaries or the terms of service of the auditors. Rather, these matters were determined by the Board which employed the auditors. The court thus determined that the position of auditor was "an employment subject to the authority of the Burial Association Board." Id. at 376.
It thus may be similarly argued that the position of Director of the Arkansas Bureau of Standards is no longer a "civil office" following the type 2 transfer because the duties of the Bureau have been transferred to the Director of the Plant Board and the Director of the Plant Board now decides what duties will be performed by the Bureau Director. I say this may be "argued" because according to my research, the "public office" versus "public employment" distinction has not been addressed in this precise context, i.e., a department's reorganization under separate act. While the general distinguishing principles are well established, applying them in this particular instance is, I believe, difficult because the position of Director of the Arkansas Bureau of Standards was and remains a position created by law with an appropriated salary suggesting significant associated duties.[4] The Director also presumably continues to be appointed by and serve at the pleasure of the Governor.See A.C.A. § 4-18-208 Repl. 1991).[5] While it seems clear, following the type 2 transfer, that the Director of the Bureau exercises no power and performs no duties independently of the Director of the Plant Board, there may be a question as to whether the position of Director of the Bureau of Standards has nevertheless been continued as a so-called "subordinate office." Ordinarily, one of the determining factors distinguishing a public officer from an employee is the grant of sovereign power to be exercised largely independent of the control of others. 67 C.J.S. Officers § 10. It has also been noted, however, that "subordination to a superior does not necessarily render a subordinate a nonofficial." 63C Am. Jur. 2d Public Officers and Employees § 7. It has been stated generally that:
 [T]he duties of an officer must be performed independently and without control of a superior power other than the law, unless they are those of an inferior or subordinate office, created or authorized by the legislature, and by it placed under the general control of a superior officer or body.
67 C.J.S. Officers § 10.
The problem or challenge in applying this approach to the case at hand is that it still appears to be premised upon the performance of legislatively prescribed duties. The threshold question in this instance thus remains — whether the type 2 transfer of the Bureau of Standards to the Plant Board effectively transformed the position of Director of the Bureau from a public office to public employment for purposes of the "civil office" determination under art. 5, § 10. One might contend that it did not because although the transfer clearly vested the Plant Board Director with all authority and responsibility for ensuring performance of the Bureau's statutorily prescribed duties, the fact remains that the duties are prescribed by law and that the Bureau Director position has been continued, at a significant salary level. This might suggest that the legislature contemplates the continued performance of these duties by the Director of the Bureau of Standards, under the control and supervision of the Director of the Plant Board. The Governor's continued appointive authority may in this context lend further credence to the argument that the Bureau Director is not merely an agent of the Plant Board Director. See generally Maddox v. State, 220 Ark. 762,249 S.W.2d 972 (1952) (concluding that a school superintendent who exercised sovereign power only as an agent of the school board was an employee rather than an officer).
The foregoing presents, in my opinion, a plausible argument in favor of the General Assembly's continuation of the position of Director of the Bureau of Standards, apart from the Director of the Plant Board, as a subordinate office. However, as discussed above, the existing general authority in this area can also be cited to support the contention that the position of Director of the Bureau of Standards does not constitute a civil office following the type 2 transfer of the Bureau to the Plant Board. Because there appears to be no authority directly on point under these particular circumstances, I am unable to predict with certainty a court's approach to the issue.
Assistant Attorney General Elisabeth A. Walker prepared the following opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] Art. 5, § 10 states that "[n]o Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State."
[2] Notwithstanding my opinion regarding the open nature of the art. 5, § 10 question, I should point out that there would appear to be no question as to Senator Scott's right to retain the salary he received as Director of the Bureau of Standards during the time he served in the Senate. See generally Biedenharn v. Hogue, 338 Ark. 660, 1 S.W.2d 424
(1999) and Starnes v. Sadler, 237 Ark. 325, 372 S.W.2d 585 (1963).
[3] These acts were not codified, despite the specific requirement to that effect in each act. See Acts 1993, Nos. 610 and 624, § 4. Although the Publisher's Notes quote the transfer provision (see, e.g., Notes to Subchapter 2 of Chapter 18 of Title 4, (Supp. 1999)), the Notes do not constitute part of the law. See A.C.A. § 1-2-115 (c). This practice clearly ignores legislative intent, and potentially leads to so-called "blind legislation" contrary to our constitution. See Ark. Const. art. 5, § 23.
[4] The legislature has passed several amendments to the 1963 Weights and Measures Act subsequent to the 1993 type 2 transfer, including a 1995 act involving the penalties for hindering or impersonating Bureau personnel, including the Director or Deputy Director. See A.C.A. §§ 4-18-210 and — 211, as amended by Act 1304 of 1995 (Supp. 1999). Act 423 of 1999 (the appropriation act for personal services and operating expenses for the State Plant Board) appropriated a maximum 2000-2001 salary of $70,567 for the Arkansas Bureau of Standards Director. Acts 1999, No. 423, § 4.
[5] The Governor's appointive authority was established under Act 691 of 1983, which separated the former Division of Weights and Measures from the Department of Commerce and created the Arkansas Bureau of Standards as an independent agency. Acts 1983, No. 691, § 14. It appears that the legislature has continued this appointive power notwithstanding its transfer of the Bureau by a type 2 transfer to the Plant Board. This may be compared with the previous 1977 legislation which transferred the powers and duties of the State Plant Board with respect to weights and measures to the Department of Commerce "the same as if [the State Plant Board] were transferred to the Department of Commerce by a Type 2 transfer. . . ." Acts 1977, No. 768, § 2. Under that act, the legislature provided that the head of the Division of Weights and Measures "shall be appointed in the same manner as the heads of the other divisions of the Department of Commerce," (id. at § 3), i.e., by the Director of the Department of Commerce, with the advice and consent of the Governor. See
Acts 1971, No. 38, § 16 (3).