The Honorable Henry "Hank" Wilkins, IV State Senator 717 W. Second Avenue Pine Bluff, Arkansas 71601
Dear Senator Wilkins:
I am writing in response to your request for an opinion on whether "a state employee can serve in the legislature, as is the case of Senator Tracy Steele who is employed by the state as director for the Arkansas Martin Luther King, Jr. Commission." You also note that "[t]here are other members of the legislature who are employed by the state in various capacities . . ." and ask that I "please advise [you] on this issue as it pertains to all state employees."
RESPONSE
In my opinion, as a general matter, the dual service of Senator Steele does not run afoul of the Arkansas Constitution and is expressly permitted, although regulated, by a 1999 act of the General Assembly.[1]
After the passage of this 1999 act, a member of the General Assembly is prohibited, after election and during the term for which elected, from accepting state employment unless he or she resigns from the legislature. The same law, however, permits the retention of a pre-existing state employment under certain specified conditions. I cannot answer your remaining question concerning "all state employees," because each instance of dual office-holding must be evaluated on its own facts, taking into account any legal provisions applicable to the particular offices or employments in question.
Several provisions of the Arkansas Constitution are implicated by Senator Steele's dual service, including Arkansas Constitution, art. 5, § 10, art. 5, § 7, and art. 4, §§ 1 and 2 (the "separation of powers doctrine"). The first provision, art. 5, § 10, provides as follows:
 No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State.
It has been reaffirmed that this provision "was designed and intended as a protection against the possible conflicts of interests a member of the legislature might have as an elected official with the power, influence and authority to create positions and offices, and the interest he might have as a private citizen who would desire to hold such civil office by appointment or election." State Board of Workforce Education v. King,336 Ark. 409, 985 S.W.2d 731 (1999), quoting Harvey v. Ridgeway,248 Ark. 35, 48, 450 S.W.2d 281, 288 (1970).
In my opinion this provision is inapplicable to the facts at hand, because according to my understanding, Senator Steele was employed with the Martin Luther King Jr. Commission prior to being elected to the General Assembly. That is, he was not appointed to that position "during the term for which he shall have been elected" to the General Assembly within the meaning of this provision. See generally, Williams v.Douglas, 251 Ark. 555, 473 S.W.2d 896 (1971) (stating that art. 5, § 10 must be read as a prohibition upon a General Assembly member after he isseated). See also Ops. Att'y Gen. 97-025 and 91-102.
Neither, in my opinion, is Senator Steele's position with the Martin Luther King Jr. Commission properly classified as a "civil office under this State" for purposes of art. 5, § 10. The relevant characteristics of a "civil office under this State" have been described as follows:
 In determining whether a particular position constitutes an `office' or mere employment, the Arkansas Supreme Court has consistently adhered to the view that an office is created by law, with the tenure, compensation, and duties of the position also usually fixed by law. See, e.g., Haynes v. Riales, 226 Ark. 370, 290 S.W.2d 7 (1956); Maddox v. State, 220 Ark. 762, 249 S.W.2d 972 (1952); and Martindale v. Honey, 259 Ark. 416, 533 S.W.2d 198 (1976). Additionally a public officer ordinarily exercises some part of the state's sovereign power. Maddox, 220 Ark. at 763; Martindale, 259 Ark. at 419. Other typical factors signifying a public office include the taking of an oath of office, the receipt of a formal commission, and the giving of a bond, although the court has consistently maintained that no single factor is ever conclusive. Haynes v. Riales, supra; Maddox v. State, supra.
Opinion No. 96-241, quoting Op. Att'y Gen. 94-031 at 2. See also Opinion No. 2001-127.
Senator Steele is not a member of the Commission. The Commission employs Senator Steele as its Executive Director. See, e.g., Haynes v. Riales,226 Ark. 370, 290 S.W.2d 7 (1956) (distinguishing between a "civil office" and a mere "employment" for purposes of art. 5, § 10); Op. Att'y Gen. 96-241 (describing the characteristics of a "civil office"); A.C.A. §§ 25-24-101 to -103 (Repl. 2002) (creating and empowering the Martin Luther King Jr. Commission and giving the Commission power to "employ such staff and consultants as authorized by law and fix their compensation, duties, authority, and responsibilities"); and Act 418 of 2003 (the appropriation act for the Martin Luther King Jr. Commission). The position of Executive Director of the Commission is not created by law. It is referred to only in the appropriation act of the Commission as a "Grade 22" state employment. See Act 418 of 2003, § 1. There is in my opinion, no grant of "sovereign power" with respect to the position of Executive Director apart from the power vested in the Commission itself.See generally, Ops. Att'y. Gen. Nos. 2000-334; 96-241 and 94-031. In my opinion, therefore, the position of Executive Director of the Commission is in all likelihood not a "civil office" for purposes of art. 5, § 10.See also Haynes v. Riales, supra (field auditor for Burial Association Board not a "civil office" and auditor who was thereafter elected to the General Assembly was not prohibited by article 5, § 10 from dual service); Op. Att'y. Gen. 2001-127 (rank and file attorney position with district public defender or state public defender office not a "civil office"); Op. Att'y. Gen. 2000-334 ("Budget Director" employed by Governor's office not a "civil office"); Op. Att'y. Gen. 96-241
(executive member staff position at Governor's office not a "civil office"); Op. Att'y. Gen. 93-432 (administrator of drug task force not a "civil office"); Op. Att'y. Gen. 92-050 (law professor at state university not a "civil office"); and Op. Att'y. Gen. 90-191 (paid employee of one of the state constitutional offices not a "civil office").
Another provision requiring discussion is Arkansas Constitution, art. 5, § 7, which provides as follows:
 No judge of the supreme, circuit or inferior courts of law or equity, Secretary of State, Attorney-General for the State, Auditor or Treasurer, recorder, or clerk of any court of record, sheriff, coroner, member of Congress, nor any other person holding any lucrative office under the United States or this State (militia officers, justices of the peace, postmasters, officers of public schools and notaries excepted), shall be eligible to a seat in either house of the General Assembly. [Emphasis added.]
This provision renders persons holding any "lucrative office under . . . this State" (with certain exceptions), ineligible to a seat in the General Assembly. In Williams v. Douglas, 251 Ark. 555, 473 S.W.2d 896
(1971), the Arkansas Supreme Court described the difference between art. 5, § 7 and art. 5, § 10 of the constitution, explaining that art. 5, § 10 addresses the eligibility of persons already seated as state legislators to be elected (or appointed) to other civil offices, whereas art. 5, § 7 addresses the eligibility of persons previously holding other lucrative offices to be seated in the state legislature.
As stated in Opinion No. 2001-127, the prohibitory constitutional provisions (art. 5, §§ 7 and 10) refer to "offices." I have concluded above that the position Senator Steele holds with the Commission does not constitute an "office." See discussion above and Op. Att'y Gen. 93-432. As a consequence, it does not constitute a "lucrative office under . . . this state" for purposes of art. 5, § 7 in much the same way the position does not constitute a "civil office under this state" for purposes of art. 5, § 10.
In any event, Senator Steele has already been "seated" by the Arkansas Senate, and that body alone is the judge of his eligibility to take a seat in the General Assembly. See Arkansas Constitution, art. 5, § 11
(making each house of the general assembly the "sole judge" of the qualifications of its members). See also Irby v. Barrett, 204 Ark. 682,163 S.W.2d 512 (1942) (state senate is the sole judge of eligibility of state senate candidate to take a seat if elected); State ex rel. Evansv. Wheatley, 197 Ark. 997, 125 S.W.2d 101 (1939); (the word "qualifications" in art. 5, § 11 held to embrace the word "eligibility"); and Op. Att'y Gen. 97-364 (the relevant house of the general assembly is the sole judge of a person's eligibility under art. 5, § 7).
The final constitutional provision requiring discussion is the "separation of powers doctrine" embodied at art. 4, §§ 1 and 2, which provide, respectively, as follows:
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
These provisions have been construed as a prohibition against certain types of dual office holding, including dual office holding by legislators. See, e.g., State Board of Workforce Education v. King,supra, and Starnes v. Sadler, 237 Ark. 325, 372 S.W.2d 585 (1963). Senator Steele's position as a member of the Arkansas Senate is, of course, in the legislative branch of government. It is not entirely clear what branch of government encompasses the Martin Luther King Jr. Commission. It is certainly not within the legislative or judicial branches. Even if the duties fall within the executive branch of government, however, it is my opinion that the simultaneous exercise of these duties does not violate the separation of powers doctrine.
An initial question arises as to whether both positions held must constitute "offices" in order to trigger the separation of powers doctrine. The position of state senator is of course, an office, but I have concluded above that the position of Executive Director of the Martin Luther King, Jr., Commission is not an office, but a mere "employment." One of my predecessors, in a 1992 opinion, concluded that the separation of powers doctrine is restricted to the holding of two "offices." See Op. Att'y Gen. 92-050 (concluding that a legislator's pre-existing and continued employment as a law professor did not violate the separation of powers doctrine, relying on language from State exrel. Murphy v. Townsend, 72 Ark. 180 (1904)).
The Arkansas Supreme Court has never squarely addressed this question. The issue was not discussed in the most recent case of State Board ofWorkforce Education v. King, supra. The positions therein were held to be "civil offices" within the contemplation of art. 5, § 10, and, as such, the "employment" issue did not arise in the court's separation of powers analysis. Neither is the issue addressed in any of the other Arkansas cases addressing the dual service of legislators in the context of a separation of powers challenge. See Martindale v. Honey, supra; Starnes,supra; Smith v. Faubus, 230 Ark. 831, 327 S.W.2d 562 (1959); andFulkerson v. Refunding Board of Arkansas, 201 Ark. 957, 147 S.W.2d 980
(1941). Each of these cases involved the simultaneous holding of two "offices" as opposed to one office and one employment. The only case squarely addressing the dual service of a legislator as a state employee is Haynes v. Riales, supra. That case, which upheld the service of a state legislator as an auditor for the Burial Association Board, involved a challenge under art. 5, § 10 and not a challenge under the separation of powers doctrine.
The courts of other states with separation of powers provisions virtually identical to Arkansas' appear to be split on the question of whether the dual office-holding prohibition attaches to "employees." Compare Peoplev. Capuzi, 20 Ill.2d 486, 170 N.E.2d 625 (1960) (declining to extend a separation of powers provision virtually identical to Arkansas' to various ministerial positions held by legislators, particularly where a separate constitutional provision governing eligibility to the legislature applied only to "offices") with State ex rel. Spire v.Conway, 238 Neb. 766, 472 N.W.2d 403 (1991) (extending a separation of powers provision virtually identical to Arkansas' to any member of another branch of government, whether officer or employee, so as to prohibit simultaneous service of university professor after election to legislature).
In addition, there are a number of cases from other jurisdictions construing separation of powers provisions somewhat divergent from the one contained in the Arkansas Constitution. These cases are similarly not in accord. Compare State ex. rel. Stratton v. Roswell IndependentSchools, 111 N.M. 495, 806 P.2d 1085 (1991) (provision prohibiting "persons charged with the exercise of powers" belonging to one department from exercising "any powers" properly belonging to either of the others did not prohibit simultaneous service of teachers as legislators); andState ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411 (1927) (constitutional language similar to that in Stratton did not prohibit state representative from being employed as an auditor for the board of railroad commissioners), with Monaghan v. School District No. 1,Clackamas County, 211 Or. 360, 315 P.2d 797 (1957) (provision prohibiting person "charged with official duties under one . . . department" from "exercis[ing] any of the functions of another" precludes dual service of teacher as legislator); State ex rel. Black v. Burch, 226 Ind. 445,80 N.E.2d 294 (1948) (provision with language similar to that discussed inMonaghan prohibits legislators from holding various state employments under state commissions); and Saint v. Allen, 169 La. 1046, 126 So. 548
(1930) (provision prohibiting "persons holding office in one [department from] exercis[ing] power properly belonging to either of the others" prohibits employment of legislators in various state employments).
The theory behind restricting the doctrine to officers as opposed to employees, as enunciated in the Capuzi, Stratton and Barney cases, is that officers are ordinarily the only officials exercising "sovereign powers" within the contemplation of the separation of powers doctrine. If the position in question is invested with no independent sovereign authority, these cases would find no separation of powers violation. SeeState ex rel. Barney v. Hawkins, supra (state representative appointed by board of railroad commissioners as auditor was "wholly subject to the power of the board, and having no powers, he can exercise none; and therefore his appointment was not violative of [separation of powers doctrine]").
This focus on the exercise of "power" in a dual office-holding context finds some support in case law from Arkansas. See e.g., State Board ofWorkforce Education v. King, supra, Martindale v. Honey, supra; State exrel. v. Feibleman, 28 Ark. 424 (1873); and State Bank v. Curran,10 Ark. 142 (1849). Specifically, in Martindale and Curran, supra, the Arkansas Supreme Court placed emphasis on the individual's ability to exercise power independent of his principal. It has been held by at least one court that the question of whether a particular position is invested with such power is a question of fact. See Saxby v. Sonnemann,318 Ill. 600, 149 N.E. 526
(1925) (legislator employed to assist Attorney General was prohibited by separation of powers doctrine from dual employment, but if he had affirmatively pled that his duties were merely ministerial a different result might have followed, as explained in Capuzi, supra).
As discussed previously, it is my opinion that the position held by Senator Steele with the Martin Luther King Jr. Commission is an employment rather than an "office." The position is not created by law, and none of the duties are enumerated in the statutes. The position, rather, appears to be a state employment, and is designated as a "Grade 22" for salary purposes. See Act 418 of 2003. It may be concluded that any power exercised in this position is undertaken at the direction of the members of the Martin Luther King Jr. Commission, who in all likelihood do hold "offices." See A.C.A. § 25-24-103 (Repl. 1996).
The powers and duties to be exercised by the Commission are: "(1) To promote racial harmony, understanding, respect, and goodwill among all citizens; (2) To promote principles of nonviolence; (3) To promote among the people of Arkansas, by appropriate activities, both awareness and appreciation of the civil rights movement and advocacy of the principles and legacy of Martin Luther King, Jr.; (4) To develop, coordinate, and advise the Governor and the General Assembly of appropriate ceremonies and activities throughout the state relating to the observance of Martin Luther King, Jr.'s birthday; and (5) To receive donations and contributions from individuals and public and private organizations in order to carry out its responsibilities." A.C.A. § 25-24-102.
Absent any further guidance from the Arkansas Supreme Court on this point and taking into account the nature of the powers exercised by the Commission and its Executive Director, it is my opinion that Senator Steele's pre-existing and continued service as an employee of the Martin Luther King Jr. Commission does not run afoul of the separation of powers doctrine. Although the separation of powers issue is not free from doubt, I cannot find sufficient basis to disagree with the conclusion reached in Op. Att'y Gen. 92-050 that the separation of powers doctrine in Arkansas is restricted to the holding of two "offices."
The provisions discussed above are the applicable constitutional doctrines relevant to your question. I have found no Arkansas statute that prohibits the simultaneous service in these positions. In fact, a 1999 act of the General Assembly expressly authorizes this type of continued employment.
Even though the Arkansas Constitution may not proscribe separate stateemployment (as opposed to office-holding), of a member of the General Assembly, Act 34 of 1999, codified at A.C.A. § 21-1-402 (Supp. 2001), prohibits an elected senator or representative from accepting state employment after election and during his or her term. A.C.A. §21-1-402(a)(1). The law makes an exception, however, for state employments held prior to election. In this regard A.C.A. §21-1-402(a)(2) (Supp. 2001), provides in pertinent part as follows:
 (2) Subject to any restrictions or conditions prescribed by the Arkansas Constitution, any constitutional officer who was employed by a state agency prior to being elected a constitutional officer may continue such employment, but the employment shall not thereafter be reclassified unless it is the result of a general reclassification affecting all positions of the class and grade equally, nor shall the constitutional officer receive any pay increase for that employment other than the cost-of-living increases authorized by the General Assembly without the prior approval of the Joint Budget Committee during legislative sessions, the Legislative Council between legislative sessions, and the Governor.
(Emphasis added).
The applicable subchapter includes members of the Arkansas Senate within the definition of "constitutional officer." This statute therefore authorizes employments such as Senator Steele's (assuming the Arkansas Constitution is no impediment), and with the applicable limitations.[2]
I should also note, however, that the Arkansas Ethics Commission is invested with statutory jurisdiction to investigate and issue advisory opinions on the requirements of the subchapter of which A.C.A. § 21-1-402
is a part. Consultation with that agency may therefore also be available in determining the answer to your question.
In addition, although I have concluded above that constitutional and statutory provisions do not prohibit the dual holding of the positions in question, an individual who serves in such dual positions should always be cognizant of any potential conflicts of interest that might arise on a case-by-case basis. The existence of a conflict of interest in a given situation or matter on the part of a public official holding dual positions does not automatically require a finding that the dual service is prohibited. State ex rel. Stratton v. Roswell Independent Schools,supra; and Reilly v. Ozzard, 33 N.J. 529, 166 A.2d 360 (1960). Conversely, the fact that the law does not prohibit the dual service does not mean that a conflict of interest on a particular matter will never exist. Id. It has been stated that: "[t]o be sure, because our legislative membership draws from all walks of life, which is as it should be, conflicts will arise from time to time." Stratton, supra at 1098.
A number of state statutes address the ethical conduct of state officials and employees, most of which are, again, within the statutory jurisdiction of the Arkansas Ethics Commission. See A.C.A. § 7-6-217
(Supp. 2002). In addition, Rule 24 of the Rules of the Senate of the Eighty-Fourth General Assembly (See SR 1 Reg. Session 2003) sets out a "Code of Ethics" for Senate members and gives the Senate Rules Committee authority to issue advisory opinions concerning those provisions. See
Rule 24.04. Any potential common law "conflict of interest" requiring recusal from participation in particular instances should also be considered. See, e.g., Op. Att'y Gen. 2002-065. In addition, any practical legal or factual concerns springing from the dual service, including issues related to salary and or state leave policies, should be referred to the appropriate state regulatory agency for resolution.[3]
Finally, I cannot provide a definitive answer to your final question concerning similar questions as to "all state employees." As discussed in Op. Att'y. Gen. 2001-357, ". . . it is impossible to make a sweeping pronouncement that would be correct as to every possible state employment. . . . Each case must be reviewed on its own facts in order to reach a conclusive determination." Particular statutory provisions may impact the issue in a given case.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] It is my understanding that Senator Steele is currently serving as Executive Director of the Commission. Although recently reported actions of the Commission reflect an attempt to remove Senator Steele from his position as Executive Director, it appears that a lawful quorum of the Commission was not present at the meeting during which this attempt occurred. A quorum consists of a majority of the number of the Commission's membership. See generally East Poinsett County SchoolDistrict #14 v. Massey, 317 Ark. 219, 876 S.W.2d 573 (1994). The Commission is comprised of twenty-six members (see A.C.A. § 25-24-101), and it is my understanding that only thirteen statutorily-authorized members of the Commission were ever present at the meeting in question. The attendance of fourteen legal members of the Commission would have been necessary to constitute a quorum.
[2] A question such as the one you pose would ordinarily also be analyzed in light of the common law "incompatibility of offices" doctrine. There is also some question as to whether this doctrine is applicable to "employments" as opposed to "offices." See, e.g., 63C Am.Jur.2d § 62; Op. Att'y Gen. 98-035, n. 4; and Thompson v. Roberts,333 Ark. 544, 970 S.W.2d 239 (1998). It is my opinion, however, in any event, that Act 34 of 1999, rather than the common-law doctrine, governs the pre-existing state employment of a General Assembly member. It has been held that the legislature may override the common law incompatibility doctrine as it deems appropriate or necessary. In theMatter of Water Use Permit Applications, 94 Haw. 97, 9 P.3d 409 (2002).
[3] But see generally, Op. Att'y. Gen. 2001-357 as to receipt of legislative salary simultaneously with state employee salary.